UNITED STATES of America, Plaintiff,

v.

Kyle R. JONES, Thayde L. Jones and Robert E. Gevara, Defendants.

No. CR–78–29 Phx WPC.

United States District Court,
D. Arizona.

April 12, 1978.

---

Daniel R. Drake, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff.

David M. Heller, Asst. Federal Public Defender, Phoenix, Ariz., for defendant Kyle R. Jones.

Jay M. Martinez, Phoenix, Ariz., for defendant Thayde L. Jones.

Hermilio Iniguez, Phoenix, Ariz., for defendant Robert E. Gevara.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

On December 22, 1977, the defendants allegedly were seen digging within Indian ruins located on the Tonto National Forest. They were arrested by Forest Service officers, and charged with the theft and destruction of Indian relics. Count One of the indictment alleges that the defendants stole government property valued in excess of $100.00. 18 U.S.C. § 641. The government property consists of clay pots, bone awls, stone matates, and other Indian artifacts located at the ruins. Count Two alleges depredation of government property, the Indian ruins located within the national forest. 18 U.S.C. § 1361. Conviction on either count can lead to a fine not more than $10,000, or imprisonment for not more than ten years, or both.

The alleged conduct, if true, also violates the Antiquities Act of 1906, which states:

> Any person who shall appropriate, excavate, injure, or destroy any historic or prehistoric ruin or monument, or any object of antiquity, situate on lands owned or controlled by the Government of the United States, without the permission of the Secretary of the Department of the Government having jurisdiction over the lands on which said antiquities are situated, shall, upon conviction, be fined in a sum of not more than $500 or be imprisoned for a period of not more than ninety days, or shall suffer both fine and imprisonment, in the discretion of the court.

Act of June 8, 1906, 34 Stat. 225 (codified at 16 U.S.C. § 433). This action raises the issue whether the government can choose to prosecute under either the theft and malicious mischief statutes, 18 U.S.C. §§ 641 and 1361, or the Antiquities Act. The resolution of this question affects more than the range of penalties that can be imposed upon the defendants. In *United States v. Diaz*, 499 F.2d 113 (9th Cir. 1974), the Court of Appeals held that the penal provision of the Antiquities Act was fatally vague in violation of the due process clause of the Constitution. Therefore, if the government cannot elect to prosecute under the theft and malicious mischief statutes, rather than the Antiquities Act, then this action must be dismissed.

In *United States v. Castillo-Felix*, the Court of Appeals stated "the general rule that, where an act violates more than one statute, the Government may elect to prosecute under either unless the congressional history indicates that Congress intended to disallow the use of the more general statute." 539 F.2d 9, 14 (9th Cir. 1976). The analysis required is demonstrated by *Kniess v. United States*, 413 F.2d 752 (9th Cir. 1969). In *Kniess*, the defendant had passed a series of bogus postal orders in several states. He was indicted for having unlawfully passed counterfeit "securities," 18 U.S.C. § 472, and for unlawfully passing forged "postal money orders." 18 U.S.C. § 500. The defendant was convicted upon a

**44**

plea of guilty and sentenced upon each count. The defendant then moved to vacate his sentences under 18 U.S.C. § 472. The Court of Appeals granted the motion. "The Government's argument in support of Kniess' indictment, conviction, and sentence under section 472 rests upon one theory: If a single act violates two statutes, the Government may elect to prosecute under either one. . . . [O]ur review of the relevant legislative history convinces us that this interpretation would be improper . . . ." *Id.* at 753–54. The Court of Appeals concluded that a bogus postal money order was not a counterfeit "security" under section 472.

It is all too obvious that reasonable interpretation often cannot depend upon a process of careful literalism. Words, phrases, and sentences of particular statutes derive their meaning from their particular contexts. This is the case here. The historical developments of the two statutes, despite the Government's fine literalism to the contrary, persuades us that section 472 does not govern money order fraud.

All of the foregoing leads to the conclusion that Congress has consistently treated money order forgery as a distinct crime. The most salient feature of this separate treatment is the fact that money order forgery has always been controlled by legislation specifying less severe penalties for money order fraud than those prescribed for fraud relating to other Government securities.

*Id.* at 754–59.

When the Antiquities Act was promulgated in 1906, it was meant to protect historic ruins and monuments on public lands from destruction "by parties who are gathering them as relics and for the use of museums and colleges." S.Rep. No. 3797, 59th Cong., 1st Sess. (1906); *see also* H.R. Rep. No. 2224, 59th Cong., 1st Sess. (1906). The Act authorized the President to declare by proclamation national monuments and reserve lands for their preservation, allowed permits for the examination and excavation of ruins, and put teeth into the permit requirement by imposing a fine or imprisonment for failure to comply. Act of June 8, 1906, 34 Stat. 225 (codified at 16 U.S.C. §§ 431 to 433). These provisions set out a comprehensive "method for protecting remains that are still upon the public domain or in Indian reservations." H.R.Rep. No. 2224, 59th Cong., 1st Sess. (1906).

The present theft and malicious mischief statutes, 18 U.S.C. §§ 641 and 1361, are consolidations of criminal statutes originating in the Act of March 4, 1909, ch. 321, §§ 35, 36, 47, 48, 35 Stat. 1095, 1096–98, and subsequently amended. *See* H.R.Rep. No. 304, 80th Cong., 1st Sess. at A54, A100 (1947). Neither party addresses whether any of these earlier statutes, passed within three years of the Antiquities Act, apply to the digging and excavation of Indian artifacts. Sections 35 and 36 of the Act of March 4, 1909, 35 Stat. 1095–96, prohibited the making of false claims against the government and the theft of military property. Sections 47 and 48 of the Act of March 4, 1909, 35 Stat. 1097–98, prohibited the theft of government property and punished receivers of stolen property. Only section 47 could arguably apply to the conduct alleged in this action:

Whoever shall embezzle, steal, or purloin any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both.

Section 47 differs little, however, from the theft statute existing when the Antiquities Act was passed in 1906. *See* Act of March 3, 1875, 18 Stat. 479 ("any person who shall embezzle, steal, or purloin any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, shall be guilty of a felony . . . ."). The 1875 theft statute also imposed a harsh punishment of up to five years imprisonment and a fine of $5,000. Presumably, when Congress promulgated the Antiquities Act in 1906, Congress either assumed that

historic ruins and Indian artifacts were not "property" protected by the theft statutes, or concluded that five years imprisonment was too harsh a punishment for excavating Indian relics. There is nothing within the text of the Act of March 4, 1909, that indicates that Congress changed its mind three years later.

Section 35 of the Act of March 4, 1909, 35 Stat. 1095, originally punished the making of false claims against the government. In 1918, section 35 was amended, in part, to prohibit the purloining of "any personal property" of the government, and to increase the penalty to a fine not more than $10,000 and imprisonment not more than ten years. Act of Oct. 23, 1918, 40 Stat. 1015. In 1934, section 35 was expanded to penalize anyone who wilfully injures "any property" of the United States. Act of June 18, 1934, 48 Stat. 996. A letter from the Attorney General, incorporated into the House and Senate reports, explained the amendment.

> The bill proposes to amend section 35 of the Criminal Code so as to prohibit injury to and depredations against Government property wherever situated. Present law provides a penalty for the theft of Government property, but there are no Federal statutes under which prosecutions may be had for willful injury to property of the United States. The need for such legislation has arisen in the work of several departments of the Government. Airway beacons . . . have been installed upon leased lands and there are reports of considerable difficulty by reason of depredations committed at these beacons. A water supply line . . . has also suffered from vandalism . . . . . Another occasion when the need for legislation of this nature was felt, was when the U.S.S. Akron was under construction for the Navy Department at Akron, Ohio. Acts of syndicalism were committed on the ship, which if not discovered, might have caused a serious disaster.

S.Rep. No. 1202, 73d Cong., 2d Sess. (1934); H.R.Rep. No. 1463, 73d Cong., 2d Sess. (1934). Finally, section 35 was amended in 1938 to allow a gradation in penalties depending upon the value of the property stolen or injured. Act of April 4, 1938, 52 Stat. 197; S.Rep. No. 1497, 75th Cong., 3d Sess. (1938); cf. Act of Nov. 22, 1943, 57 Stat. 591; S.Rep. No. 505, 78th Cong., 1st Sess. (1943), reprinted at 1943 U.S. Code Cong. Serv., p. 2275. The Court concludes that amended section 35 does not extend beyond property already protected by the theft prohibition of section 47; and, section 47 does not apply to Indian artifacts regulated by the Antiquities Act.

A colorable argument can be made that differences between the Antiquities Act and the theft and malicious mischief statutes evidence a legislative intent to allow prosecution under either. For example, 18 U.S.C. § 1361 prohibits "willful" injury to government property. The statutory requirement of willfulness requires the accused to act intentionally, "with knowledge that he was [breaking] the statute." United States v. Berrigan, 417 F.2d 1002, 1004 (4th Cir. 1969), cert. denied 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970). 18 U.S.C. § 641 prohibits theft of government property. Theft requires an "intent to appropriate [property] . . . to a use inconsistent with the owner's rights and benefits." Ailsworth v. United States, 448 F.2d 439, 442 (9th Cir. 1971); see Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The Antiquities Act can be read to impose a lesser punishment upon a person whose guilty knowledge does not fall within the theft and malicious mischief statutes. The Court will not draw these conclusions, however.

> Inferences as to possible legislative intent drawn from such variations in statutory terminology are of questionable validity. The phrases employed by one legislative draftsman are an unreliable clue as to that which another writer, at a different point in time, but seeking similar results, may have intended by the use of slightly different terms.

Kniess v. United States, supra at 754. In 1906, the Antiquities Act was conceived as a comprehensive plan to deal with the preser-

vation of ruins on the public lands. *See* H.R.Rep. No. 2224, 59th Cong., 1st Sess. at 2–8 (memorandum concerning the historic ruins of Arizona, New Mexico, Colorado, and Utah, and their preservation). Indeed, the departments of government have promulgated rules and regulations, consistent with the intent of Congress, to preserve American antiquities. *See* 25 C.F.R. pt. 132 (1977); 36 C.F.R. § 261.9 (1977); 43 C.F.R. pt. 3 (1976). The Antiquities Act is thereby the exclusive means by which the government could prosecute the conduct alleged in this action. The holding in *Diaz, supra,* leaves a hiatus which the Congress should correct by appropriate legislation.

IT IS ORDERED:

The motion to dismiss is granted and the indictment herein is dismissed with prejudice as to all defendants.