**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Kyle R. JONES, Thayde L. Jones and**
**Robert E. Gevara,**
**Defendants-Appellees.**

**No. 78–2055.**

United States Court of Appeals,
Ninth Circuit.

Oct. 24, 1979.

Daniel R. Drake, Asst. U. S. Atty., Phoenix, Ariz., Daniel E. Fromstein, U. S. Atty., Dept. of Justice, Bethesda, Md., on brief; Michael D. Hawkins, U. S. Atty., Phoenix, Ariz., argued, for plaintiff-appellant.

David M. Heller, Samuel Alba, Jay M. Martinez, Hermilio Iniguez, Phoenix, Ariz., on brief; Tom O'Toole, Federal Public Defender, Phoenix, Ariz., argued, for defendants-appellees.

Before WALLACE and TANG, Circuit Judges, and THOMPSON,* District Judge.

TANG, Circuit Judge.

On December 22, 1977 Forest Service officers and archaeologists allegedly observed the defendants, Kyle Jones, Thayde Jones, and Robert Gevara, digging in Indian ruins located on federal government land in the Brooklyn Basin of the Cave Creek Range District of the Tonto National Forest. The officers arrested the defendants, and a grand jury returned a two count indictment. Count I of the indictment charged that the defendants wilfully and knowingly stole Indian artifacts consisting of clay pots, bone awls, stone metates and human skeletal remains, of a value in excess of $100, in violation of 18 U.S.C. §§ 641 and 2. Count II charged that the defendants, by means of a pick and shovel, injured the Indian ruins located in the Brooklyn Basin of the Cave Creek Range District of the Tonto National Forest, causing damage to the property in

* The Honorable Gordon Thompson, Jr., District Judge for the Southern District of California, sitting by designation.

excess of $100, in violation of 18 U.S.C. §§ 1361 and 2.

The defendants moved to dismiss the indictments, and in a published opinion, *United States v. Jones,* 449 F.Supp. 42 (D.Ariz. 1978), the district court granted the motion. After reviewing the legislative history of the Antiquities Act, 16 U.S.C. § 433, and the theft and malicious mischief statutes, 18 U.S.C. §§ 641 and 1361, the district court concluded that Congress intended that the Antiquities Act be the exclusive means of prosecuting the conduct alleged in the indictment. Because this court had previously held that the penal provision of the Antiquities Act was unconstitutionally vague, *United States v. Diaz,* 499 F.2d 113 (9th Cir. 1974),[1] the Government's inability under the ruling to proceed under 18 U.S.C. § 641 or § 1361 meant that there was no statute under which the defendants could be prosecuted. The Government appeals the dismissal of the indictments. We reverse.

Initially, we set forth the statutes in question. The penal provision of the Antiquities Act, 16 U.S.C. § 433, provides that:

Any person who shall appropriate, excavate, injure, or destroy any historic or prehistoric ruin or monument, or any object of antiquity, situate on lands owned or controlled by the Government of the United States, without the permission of the Secretary of the Department of the Government having jurisdiction over the lands on which said antiquities are situated, shall, upon conviction, be fined in a sum of not more than $500 or be imprisoned for a period of not more than ninety days, or shall suffer both fine and imprisonment, in the discretion of the court.

Under 18 U.S.C. § 641:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.

Under 18 U.S.C. § 1361:

Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, shall be punished as follows:

If the damage to such property exceeds the sum of $100, by a fine of not more than $10,000 or imprisonment for not more than ten years, or both; if the damage to such property does not exceed the sum of $100, by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.

We have encountered a number of situations where certain conduct is proscribed by more than one statute. The rule we apply is straightforward: "where an act violates more than one statute, the Government may elect to prosecute under either unless the congressional history indicates that Congress intended to disallow the use of the more general statute." *United States v. Castillo-Felix,* 539 F.2d 9, 14 (9th Cir. 1976). *See United States v. Batchelder,* —— U.S. ——, ——, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *United States v. Gomez-Tostado,* 597 F.2d 170 (9th Cir. 1979);

---

1. In *United States v. Smyer,* 596 F.2d 939 (10th Cir. 1979), the Tenth Circuit disagreed with our conclusion, and held that the penal provision of the Antiquities Act was not unconstitutionally vague.

*United States v. Burnett,* 505 F.2d 815 (9th Cir. 1974), *cert. denied,* 420 U.S. 966, 95 S.Ct. 1361, 43 L.Ed.2d 445 (1975); *United States v. Brown,* 482 F.2d 1359 (9th Cir. 1973). Repeals by implication are not favored, and effect should be given to overlapping statutes where possible. *Burnett,* 505 F.2d at 816. *See United States v. Georgia-Pacific Co.,* 421 F.2d 92, 102 (9th Cir. 1970).

The district court acknowledged this rule, *Jones,* 449 F.Supp. at 43, but held that our analysis in *Kniess v. United States,* 413 F.2d 752 (9th Cir. 1969), was controlling. In *Kniess,* a defendant who was charged with passing counterfeit postal money orders pleaded guilty to violations of both 18 U.S.C. § 472 (passing counterfeit securities) and 18 U.S.C. § 500 (passing forged postal money orders). After reviewing the congressional history of § 500, and observing that Congress had consistently designated a more lenient punishment for § 500 than § 472 each time it reenacted § 500, we concluded that Congress intended that § 500 be the exclusive means of prosecuting the conduct in question, and vacated Kniess's sentence under § 472.

In light of *Kniess,* the district court undertook a review of the historical development of both the Antiquities Act and 18 U.S.C. §§ 641 and 1361. Because the Antiquities Act, in addition to proscribing destruction of ruins penally, also authorized the President to declare national monuments by proclamation and provided for the issuance of permits for the examination and excavation of ruins, the court concluded that the act set out a "comprehensive method" for protecting remains that are still in the public domain or on Indian reservations.

*Jones,* 449 F.Supp. at 44 (citing H.R.Rep.No. 2224, 59 Cong., 1st Sess. (1906)).

The court then turned to the history of the present theft and malicious mischief statutes. It found that §§ 641 and 1361 originated in § 47 of the Act of March 4, 1909, ch. 321, § 48, 35 Stat. 1095, 1096–98, which prohibited theft of government property.[2] Because § 47 differed little from the theft statute in existence when the Antiquities Act was passed,[3] the court concluded that Congress, in passing the Antiquities Act either assumed that Indian ruins and artifacts were not "property" within the meaning of the theft statutes, or that five years imprisonment was too harsh a punishment for this type of conduct. Although injury to government property was not prohibited until § 35 of the Act of March 4, 1909 was amended in 1937, the court concluded that § 35 was amended to prevent injury to the same property protected by the theft statute and therefore § 35, like § 47, did not apply to Indian artifacts and ruins regulated by the Antiquities Act.

We compliment the district court's thoughtful consideration of this issue, but we are compelled to disagree with its conclusion. We begin our analysis by stressing that the alleged conduct of the defendants is prohibited by the express language of §§ 641 and 1361. There can be little doubt that the ruins located in the Tonto National Forest and the relics found on the ruins are the property of the United States government. The issue, then, is whether the passage of the Antiquities Act makes inapplicable the plain language of the §§ 641 and 1361.[4]

We restate the rule: where statutory coverage overlaps, the Government may

**2.** Section 47 provided that

Whoever shall embezzle, steal, or purloin any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, shall be fined not more than five thousand dollars, or imprisoned not more than five years, or both.

**3.** The Act of March 3, 1875, 18 Stat. 479 provided that

any person who shall embezzle, steal, or purloin any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the United States, shall be deemed guilty of felony . . . .

**4.** In general, we are reluctant to look beyond the express language of the statute where the statute is unambiguous. *See Intern. Tel. & Tel. Corp. v. General Tel. & Elec. Corp.,* 518 F.2d 913, 917–18 (9th Cir. 1975).

elect to prosecute under either statute "unless the congressional history indicates that Congress intended to disallow the use of the more general statute." *Castillo-Felix,* 539 F.2d at 14. We think that the district court gave too much weight and accorded too much significance to the sparse legislative history[5] of the statutes in question. From our examination of this history, we find no indication that Congress, in passing the Antiquities Act, meant to limit the applicability of the general theft statutes; nor do we find that Congress in passing the general statutes, intended that they would not apply to conduct covered by the Antiquities Act. The history of each statute is simply silent on the effect it would have on the other statute. Given this silence, we cannot find that Congress intended to disallow use of the more general statute, *see id.*

The district court labeled the Antiquities Act a "comprehensive" method for protecting Indian remains and inferred from this that it was designed as the sole means of prosecuting the conduct it proscribes. We do not think, however, that even if the Antiquities Act was "comprehensive" that, without more, we can infer that Congress intended that it be the exclusive means of dealing with this conduct. Otherwise, we would be required to ascribe to Congress an intent to limit the punishment of theft and depredation on Indian ruins by means of a $500 fine, no matter how great the theft or depredation. This we cannot do. Where the statute applies to the conduct in question and there is no affirmative evidence that Congress intended to limit the application of the more general statute, the prosecutor is free to elect to prosecute under either. We cannot ignore the plain meaning and application of a statute unless Congress affirmatively indicates that it intends that the statute should not apply. In the absence of such evidence, we must assume that Congress meant what it said.

■ We are also unpersuaded by the district court's analysis of the historical development of the general theft and depredation statutes. We are willing to assume that, when Congress enacted the general statutes it did not specifically contemplate whether they would apply to theft and depredation on Indian lands. Where the words and purpose of a statute plainly apply to a particular situation, however, the fact that the specific application of the statute never occurred to Congress does not bar us from holding that the situation falls within the statute's coverage. *See Patagonia Corp. v. Board of Governors of the Federal Reserve System,* 517 F.2d 803, 811 (9th Cir. 1975); *Eastern Airlines v. Civil Aeronautics Board,* 122 U.S.App.D.C. 375, 354 F.2d 507, 510–11 (D.C.Cir.1965).

*Kniess* is distinguishable. In *Kniess,* by tracing the history of several enactments of the narrow statute, we found that Congress intended that the narrow statute should preclude application of the more general statute. Such was not the case here. Other than the mere passage of the Antiquities Act and the scant history surrounding its enactment, there was nothing from which we can infer that Congress intended to preclude resort to the general theft and depredation statutes. Unlike *Kniess,* there has been here only congressional silence since the passage of the narrow statute.

■ There is another meaningful distinction between this case and *Kniess.* In *Kniess,* where the narrow statute required proof of guilty knowledge and the general statute did not, we minimized the significance of the difference in language contained in the statutes. *Kniess,* 413 F.2d at 754. Because the narrow statute also carried a lesser penalty, we found it implausible that Congress would adopt a statutory scheme in which the more specific a person's guilty knowledge the less severe was his penalty. The present case is different. The Government must prove specific intent

---

**5.** The Senate report accompanying the Antiquities Act, S.R.Rep.No.3937, 59th Cong., 1st Sess. (1906) is only one page long; the House report, H.R.Rep.No.2224, 59th Cong., 1st Sess. (1906), is only eight pages in length, six pages of which merely described the ruins that would be covered under the Act.

as an element of the proof of a violation of §§ 641 or 1361, *see Ailsworth v. United States,* 448 F.2d 439 (9th Cir. 1971), but specific intent is not an element of 16 U.S.C. § 433. On the other hand, §§ 641 and 1361 provide greater penalties than § 433. Thus, there exists a rational statutory framework in which the degree of punishment corresponds to the presence of specific intent. In contrast to the situation in *Kniess,* our interpretation of the overlapping statutes is compatible with a rational congressional policy.

Reversed and remanded.