## UNITED STATES of America

v.

## Shawn Del EICHMAN and Joseph P. Urgo, Jr., Defendants.

### No. 90 Cr. 735 (LBS).

United States District Court,
S.D. New York.

Feb. 1, 1991.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (William B. Pollard, III, James E. Johnson, of counsel), for the U.S.

The Legal Aid Soc., New York City (Ian S. Weinstein, of counsel), for defendant Shawn D. Eichman.

Law Office of William M. Kunstler, New York City (William M. Kunstler, of counsel), for defendant Joseph P. Urgo, Jr.

## OPINION

SAND, District Judge.

This criminal case involves charges arising from acts allegedly committed by the defendants at the United States Armed Forces Recruiting Station at Times Square

in New York City. Count three of the indictment, brought pursuant to the Assimilative Crimes Act, 18 U.S.C. § 13 (1988), charges the defendants with burglary in the third degree in violation of N.Y.Penal Law § 140.20 (McKinney 1988). Presently before this Court are the defendants' motions to dismiss count three of the indictment, or, in the alternative, to permit an inspection of the grand jury minutes.

The issue raised by defendants' motions is what constitutes "enter[ing] ... in a building with intent to commit a crime therein" under the burglary provisions of the New York Penal Law. The government opposes defendants' motions but asks this Court to issue a ruling on how the jury will be charged on the burglary count. For the reasons given below, this Court denies the motion to dismiss and the motion to inspect. However, we grant the government's request and set forth our determination as to how the jury will be charged with respect to the elements of the burglary count.

## I. BACKGROUND

The government and the defendants are in substantial agreement as to the facts of this case. On September 11, 1990, defendants Shawn Eichman and Joseph Urgo went to the Armed Forces Recruiting Station at Times Square and climbed onto the roof of the one story structure using a ladder. Once on the roof the defendants poured motor oil over the surface of the roof and onto the exterior signs of the building. The defendants then lowered the American flag flying over the building, doused it with lighter fluid and set it on fire. Defendants claim that their activities were acts of political protest symbolizing their objection to American policy in the Persian Gulf.

Shortly after they ignited the flag, defendants were arrested on the roof by New York City police officers. The next day they were arraigned on a complaint charging attempted arson of the recruiting station. The government subsequently decided not to pursue the arson charge. Instead, the indictment returned by the grand jury charged defendants with three other crimes: (1) injuring and committing depredations against property of the United States, in violation of 18 U.S.C. §§ 1361, 1362 (1988); (2) reckless endangerment, in violation of 18 U.S.C. §§ 7, 13 (1988) and N.Y.Penal Law § 120.20 (McKinney 1988); and (3) burglary in the third degree, in violation of 18 U.S.C. §§ 7, 13 and N.Y.Penal Law § 140.20.

On November 16, 1990, defendants made a request for a Bill of Particulars. The government responded the same day with a letter which states, in part, that "the Government does not contend that the defendants entered within the four walls and beneath the roof of the Recruiting Station. Rather, the Government contends that the defendants unlawfully entered upon the roof of the Recruiting Station." *See* Government's Memorandum of Law, p. 4.

On December 17, 1990, defendants moved to dismiss the burglary count of the indictment on the ground that absent an allegation that defendants entered within the four walls of the recruiting station, the government would be unable to prove the "entry" element of the burglary count at trial. Defendants moved in the alternative to inspect the minutes of the grand jury proceedings. The government argues that the defendants' motions should be denied because the indictment pleads all the necessary elements of burglary under New York law. However, the government nonetheless asks this Court to reach the merits of defendants' argument regarding the entry element. *See* Government's Memorandum of Law, p. 6. The government suggests that it would be appropriate for this Court to address the issue in the form of a ruling on how the jury will be charged at trial with regard to the entry element of the burglary charge.

## II. DISCUSSION

### A. *Defendants' Motion to Dismiss*

██ For purposes of evaluating a motion to dismiss an indictment, all well-pleaded allegations are taken as true. *United States v. South Florida Asphalt Co.*, 329 F.2d 860, 865 (5th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964).

A motion to dismiss is not a device for the summary trial of the evidence; it is addressed only to the facial validity of the indictment. *See United States v. Winer,* 323 F.Supp. 604, 605 (E.D.Pa.1971). So long as the indictment sets forth the elements of the offense in sufficient detail to provide the defendant with notice of the charges against him and does not present double jeopardy problems, it is impervious to attack on a motion to dismiss. *See United States v. Mobile Materials, Inc.,* 871 F.2d 902, 906 (10th Cir.1989).

■ In this case, count three of the indictment pleads all of the elements of the offense of burglary. Under New York law, a person is guilty of burglary in the third degree when he "knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y.Penal Law § 140.20. The third count tracks the statutory language, charging that the defendants "knowingly entered and remained in ... [the recruiting station] with intent to commit one or more crimes therein." Assuming the factual allegations contained in count three to be true, the count properly pleads the charge of burglary in the third degree. Consequently, the motion to dismiss must be denied.

Defendants argue that while the third count may plead all the elements of burglary, it should be dismissed nonetheless because the government's statements in the Bill of Particulars demonstrate that the government will not be able to prove the element of "entry" at trial. This argument is without merit. Statements made by the government in a Bill of Particulars are not deemed to modify the indictment. *See United States v. Fischbach & Moore, Inc.,* 750 F.2d 1183, 1189 (3d Cir.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985). So long as the indictment properly pleads an offense, it is not subject to challenge on the ground of lack of evidence. *See Costello v. United States,* 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956). Consequently, even if the defendants are correct that the statements in the Bill of Particulars show that the government will have insufficient evidence to prove the crime of burglary, the indictment is not subject to challenge on that ground.

■ Defendants also argue for dismissal on the ground that the government indicted them on the burglary charge, which is the only felony count in the indictment, in order to punish them for expressing their political views. In response, the government maintains that it could have sought indictment on the charge of attempted arson, which carries a higher penalty than burglary, but did not do so because it thought that the burglary charge better fit the defendants' conduct. The decision whether to prosecute an individual, and for what crime, are matters resting in the sound discretion of the prosecuting authorities. This Court finds no reason to question the government's exercise of its prosecutorial discretion in this case.

B. *Defendants' Motion to Inspect Grand Jury Minutes*

■ In the alternative, defendants move for an order allowing them to inspect the minutes of the proceedings before the grand jury that indicted them. In support of this motion, defendants argue that the government's position with respect to the entry element of burglary under New York law is frivolous and that a properly instructed grand jury could not have returned the burglary indictment against them. In order to succeed on a motion to inspect the minutes of a grand jury, a defendant must show a "particularized need, or a gross and prejudicial irregularity influencing the grand jury, or some similar compelling reason." *United States v. Cummings,* 49 F.R.D. 160, 161 (S.D.N.Y. 1969); *see also United States v. Mechanik,* 475 U.S. 66, 75, 106 S.Ct. 938, 944, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring) (presumption of regularity in grand jury proceedings may be overcome only by defendant's presentation of "particularized proof" of irregularities in process). In this case, there are no critical contested issues of fact. Nor have the defendants presented any other evidence demonstrating a particular need for the minutes or any gross

irregularity in the grand jury process. Accordingly, their motion to inspect the minutes is denied.

### C. *Government's Request for Ruling on Charge to Jury*

In its Memorandum of Law in opposition to defendants' motions and again at oral argument, the government argued that while the motions should be denied, this Court nonetheless should reach the substantive issue raised therein. The government asks that we rule on how the jury would be charged with regard to the burglary count, on the ground that resolution of that question at this time is likely to advance the resolution of this case. We treat the government's request as being in the nature of a motion *in limine* and grant the request.

 The underlying issue raised by defendants' motions is whether the defendants can be convicted of burglary under New York law if the government does not attempt to prove that they ever entered within the four walls or beneath the roof of the recruiting station. This court is convinced that they cannot.

Under New York law, a person must "enter or remain unlawfully in a building" in order to be guilty of burglary in the third degree. N.Y.Penal Law § 140.20.[1] In defining unlawful entry the Penal Law focuses on the requirement of unlawfulness, defining it in terms of lack of license or privilege to be in a building. *See* N.Y. Penal Law § 140.00(5). However, the Penal Law does not define the breadth of the concept of entering *in* a building.

In the absence of statutory guidance, the parties place their reliance on a recent Court of Appeals decision, *People v. King*, 61 N.Y.2d 550, 463 N.E.2d 601, 475 N.Y. S.2d 260 (1984). In *King*, the defendant appealed his conviction for attempted burglary of a jewelry store. The store was on the ground floor and had a metal security gate covering the display windows and the

vestibule area which led past the display windows and into the interior of the store. The defendant was apprehended after he cut a small hole in the part of the security gate directly in front of the vestibule area. *See id.* at 552–53, 463 N.E.2d at 602, 475 N.Y.S.2d at 261.

The defendant's first contention in *King* was that he should not have been convicted because it would have been impossible for him to enter the store in that the hole was not big enough for his body to pass through. The Court rejected this contention, holding that because the Penal Law does not define "enter" the term retains its common law meaning, which is that entry is accomplished when a person "intrudes within a building, no matter how slightly." *Id.* at 555, 463 N.E.2d at 603, 475 N.Y.S.2d at 262. Because the defendant could have put a part of his body through the hole, the entry requirement was satisfied.

The defendant's second contention was that the vestibule area was not part of the "building" within the meaning of the statute, such that his attempt to enter it was not attempted burglary. The Court also rejected this contention, holding that the "existence of the security gate, which can be pulled down to completely enclose the vestibule area from public access, albeit with a temporary fourth wall, makes the vestibule functionally indistinguishable from the space inside the display cases or the rest of the store." *Id.*

In this case, both parties focus on the part of the *King* opinion which discusses the vestibule area. The government reads that part as standing for the proposition that the element of entering is satisfied so long as the defendant goes into "an area of or related to a building to which the public has been or can be denied access." Government's Memorandum of Law at 7. The defendants interpret *King* to mean that in order to be guilty of burglary, the defendant must intrude into some enclosed space in or connected to a building.

---

1. The phrase "remain unlawfully" is included in the statute to cover situations where an individual has permission to enter a building, but remains after that permission has expired or been revoked. *See* N.Y.Penal Law § 140.00(5) (McKinney 1988). As such, that phrase has no application in this case.

In deciding which view of *King* is correct, the appropriate starting point is the common law of burglary since, according to the *King* Court, the element of entry still retains its common law meaning in New York. *See King*, 61 N.Y.2d at 555, 463 N.E.2d at 603, 475 N.Y.S.2d at 262. At common law, burglary was the breaking and entering of a dwelling house at night with the intent to commit a felony therein. The predominate impetus of common law burglary was "to protect the security of the home, and the person within his home." Note, *Statutory Burglary—The Magic of Four Walls and a Roof,* 100 U.Pa.L.Rev. 401, 427 (1951). The offense was directed at preserving the internal security of the dwelling; consequently, an entry into the structure itself was an essential element of the crime. The intrusion of any part of the defendant's body, or of an object held in his hand, was sufficient to establish the element of entry. Yet there had to be some movement by the defendant across the external boundaries of the structure, some breaking of the planes created by the threshold and the four walls. *See* 3 *Wharton's Criminal Law* §§ 331–332 (C. Torcia 14th ed. 1980); 4 W. Blackstone, *Commentaries on the Laws of England* 227 (1988) (reprint of original edition). Activity conducted outside the external boundaries of a dwelling, no matter how felonious, was not burglary at common law.[2]

The scope of common law burglary was expanded somewhat through the concept of curtilage. Curtilage was defined as the area within close proximity to the dwelling house. *See* 3 *Wharton's Criminal Law, supra,* § 336. Outbuildings within the curtilage were deemed to be part of the dwelling house, such that an unlawful entry into the outbuilding was burglary. *See id.* In essence, then, the effect of the concept of curtilage was to expand the definition of dwelling house; however, it did not alter the entry requirement. Thus a defendant might be convicted of burglary for stealing from a homeowner's barn, but only if he actually entered within the four walls of the barn.

Because the common law required that a defendant penetrate the exterior walls of a structure in order to be guilty of burglary, such penetration is required for the commission of statutory burglary in New York. *See King*, 61 N.Y.2d at 555, 463 N.E.2d at 603, 475 N.Y.S.2d at 262 (entry requirement in burglary statute adopts common law definition). Thus in this case, the defendants may be convicted of burglary only if the government can prove that they actually entered within the four walls or beneath the roof of the recruiting station.

This conclusion comports with the Court of Appeal's decision in *King* and the case law of New York's lower courts. In *King,* the vestibule of the jewelry store was within the planes created by the four exterior walls of the building. *See id.* Thus the defendant was guilty of attempted burglary because he tried to gain entrance to the vestibule. In *People v. Bright,* 162 A.D.2d 212, 556 N.Y.S.2d 585, 586 (1990), the defendant's conviction for burglary was upheld where he was apprehended inside the vestibule area of a store, which was within the area encompassed by the four walls of the building. In *People v. Pringle,* 96 A.D.2d 873, 873–74, 465 N.Y.S.2d 742, 743 (App.Div.1983), the defendant's conviction for burglary was upheld where he entered a separately secured nurse's station within a prison and committed an assault. The common thread in these cases is that in all three instances, the defendants actually entered into the interiors of enclosed and separately secured structures.

In addition to its consonance with the caselaw of New York, the view of the entry requirement adopted by this Court comports with the restraints imposed by the rule of lenity. That rule, sometimes referred to as the principle of legality, is implicit in the concept of due process. As expressed by the Supreme Court, the rule of lenity requires that "before a man can be punished as a criminal under the federal law, his case must be 'plainly and unmis-

---

**2.** Thus Lord Hale maintained that firing a gun into a house was not burglary unless some part of the weapon crossed the threshold. *See* Note, *supra,* at 412.

takably' within the provisions of some statute." *United States v. Gradwell,* 243 U.S. 476, 485, 37 S.Ct. 407, 410, 61 L.Ed. 857 (1917) (quoting *United States v. Lacher,* 134 U.S. 624, 628, 10 S.Ct. 625, 626, 33 L.Ed. 1080 (1890)); *see also Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972) (criminal statute must give person of ordinary intelligence fair notice of conduct forbidden by a statute). Courts should decline to interpret a criminal statute to encompass situations which a reasonable layperson could not foresee as being within the ambit of the statute. In this case, there is little doubt but that the defendants knew that their actions on the rooftop of the recruiting station violated the law. Trespass, destruction of government property, reckless endangerment and perhaps even attempted arson were foreseeable charges stemming from their conduct. That the defendants could reasonably have foreseen the charge of burglary is, however, a much more doubtful proposition.

In sum, this Court is of the view that the New York Penal Law requires that a defendant actually enter within the four walls or beneath the roof of a building in order to be guilty of burglary in the third degree. At trial, the jury will be instructed that they may not convict the defendants of the burglary charge unless they find that such an entry occurred. Of course, if the government presents no evidence of such entry then the count will be dismissed.

## CONCLUSION

For the reasons given above, defendants' motion to dismiss the third count of the indictment and their motion to inspect the grand jury minutes are denied. The government's request for a ruling on the charge to be given to the jury is granted. At trial, the jury will be instructed in the manner discussed above.

SO ORDERED.