UNITED STATES of America, Appellee,

v.

**Shawn Dell EICHMAN and Joseph Peter Urgo, Jr., Defendants–Appellants.**

**Nos. 336, 337, Dockets 91–1377, 91–1378.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 13, 1991.

Decided Feb. 13, 1992.

James E. Johnson, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., William B. Pollard, III, Nelson W. Cunningham, Asst. U.S. Attys., of counsel), for appellee.

Darrell B. Fields, Legal Aid Soc., New York City, for defendant-appellant Eichman.

William Kunstler, New York City, for defendant-appellant Urgo, Jr.

Before VAN GRAAFEILAND, NEWMAN and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Shawn Dell Eichman and Joseph Peter Urgo, Jr. ("defendants") appeal from judgments of the United States District Court for the Southern District of New York convicting them after a jury trial before Judge Sand of damaging government property, 18

U.S.C. §§ 1361 and 1362, and attempted destruction of government property by fire, 18 U.S.C. § 844(f). They were sentenced to two years probation, 200 hours of community service, and mandatory special assessments of $100. Defendants contend that the government violated their First Amendment right to free speech and their due process right to be free from vindictive prosecution by prosecuting the section 844(f) charge. We disagree with this contention and affirm the judgments of the district court.

During all times hereinafter mentioned, the United States operated an Armed Services Recruiting Station in a one-story building located in the heart of Manhattan's Times Square. During the morning rush hour on September 11, 1990, defendants climbed to the roof of this building where they demonstrated vocally and physically against American activities in the Persian Gulf. In addition to their use of bullhorn exhortations and protest banners, they poured motor oil and a red liquid upon the roof and sides of the building, apparently to symbolize a mixture of Middle East oil and blood. Not content with the damage caused thereby, defendants lowered the government-owned American flag and attempted to burn it. Before this could be accomplished completely, defendants were arrested.

Defendants were indicted on three counts, two of which, damaging government property and reckless endangerment, were misdemeanors, and the third of which, third degree burglary, was a felony.[1] The government included the felony count because the grand jury and the prosecutor deemed the defendants' conduct to be sufficiently egregious to warrant such a count. However, the burglary count—entering a building with intent to commit a crime— was a poor choice, because defendants never entered the recruiting station. When the district court indicated in an *in limine* ruling that it would instruct the jury not to convict on the burglary count absent proof of an entry, *see United States v. Eichman*, 756 F.Supp. 143, 149 (S.D.N.Y.1991), the government dropped the burglary count. In a superseding indictment, the government charged a violation of section 844(f), a much more appropriate statute.

As originally enacted as part of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922, 957, section 844(f) read:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other personal or real property in whole or in part owned, possessed, or used by, or leased to, the United States, any department or agency thereof, or any institution or organization receiving Federal financial assistance shall be imprisoned for not more than ten years, or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years, or fined not more than $20,000, or both; and if death results shall be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

Contemporaneous congressional comments demonstrated a legislative intent to control the rash of bombings by protest groups during the late 1960s. *See United States v. Gelb*, 700 F.2d 875, 878 (2d Cir.), *cert. denied*, 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983).

> The perceived threat lay not so much in ideology or political objective, but rather focused on the alarming trend during the late 1960s when "selective bombing" emerged as a frequent vehicle for extreme social and political protest: (legislative comments omitted).

*Id.*

Because of the difficulties often encountered in determining whether fires are caused by an explosive, *see id.* at 879, Congress, in the Anti–Arson Act of 1982, Pub.L. No. 97–298, 96 Stat. 1319, inserted the words "fire or" immediately before the word "explosive" in the original statute. In 1984 Congress again broadened the

---

**1.** Defendants were acquitted on the reckless endangerment count.

scope of the statute. It deleted the phrase "personal injury results" and substituted the phrase "personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection," and made a similar change and substitution in connection with the phrase "death results." *See* Pub.L. No. 98–473, ch. X, pt. M, § 1014(1), (2), 98 Stat. 1837, 2142 (1984). The Senate Report indicates that a death or injury would be a "direct or proximate result" of proscribed conduct if it was reasonably foreseeable, a standard that would include, among other things, death or injury sustained by firemen who are injured by high speed driving of fire equipment and police officers who are injured in attempting to exercise crowd control. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 359 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3508. Section 844(f) seems so clearly applicable to the conduct of the defendants in the instant case that it is difficult to understand why the government did not charge its violation at the outset.

■ The Constitution did not preclude defendants' prosecution under section 844(f) simply because an American flag was involved. Although Eichman previously has been accorded First Amendment protection for burning her own flag, *see United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990), in *Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 2729–30, 41 L.Ed.2d 842 (1974) (per curiam), the Supreme Court said "We have no doubt that the State or National Governments constitutionally may forbid anyone from mishandling in any manner a flag that is public property." We find nothing in this record or our independent research to indicate that the government customarily prosecutes other cases in which property damage does not exceed $100 under 18 U.S.C. § 1361, while using section 844(f) for cases involving flag burnings.

■ The district court correctly found that the government was not acting vindictively in charging a violation of section 844(f). The original counts of an indictment are not unalterably set in concrete. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *United States v. Goodwin*, 457 U.S. 368, 382, 102 S.Ct. 2485, 2493, 73 L.Ed.2d 74 (1982). A prosecutor cannot be presumed to have acted vindictively because he exercised this broad discretion. *See United States v. Rooney*, 866 F.2d 28, 33 (2d Cir.1989); *United States v. Hinton*, 703 F.2d 672, 678–79 (2d Cir.), *cert. denied*, 462 U.S. 1121, 103 S.Ct. 3091, 77 L.Ed.2d 1351 (1983). The prosecutor in the instant case indicated from the outset his belief that defendants' conduct warranted a felony charge. There is nothing vindictive about the fact that he substituted a proper felony count for one selected in error. *See Hinton, supra*, 703 F.2d at 678–79.

The judgments of the district court are affirmed.