UNITED STATES of America,

v.

Vincent "Jimmy" SICURELLA and Michael LaPorta, Defendants.

No. 91–CR–291C.

United States District Court, W.D. New York.

Sept. 17, 1993.

Patrick H. NeMoyer, U.S. Atty. (Anthony M. Bruce, Asst. U.S. Atty., of counsel), Buffalo, NY, for U.S.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria (Herbert L. Greenman, of counsel), Buffalo, NY, for defendant Vincent "Jimmy" Sicurella.

Joel L. Daniels, Buffalo, NY, for defendant Michael LaPorta.

## BACKGROUND

CURTIN, District Judge.

On June 29, 1993, defendants Michael LaPorta and Vincent "Jimmy" Sicurella were convicted of conspiracy (Count I), mail fraud (Count II) through use of fire (Count III), and willful destruction of government property (Count IV) through use of fire (Count V). Pursuant to Rules 33, 34, and 29(c) of the Federal Rules of Criminal Procedure, defendants now move for a judgment of acquittal, new trial, and bail under 18 U.S.C. § 3143(a)(2).

The defendants were charged with procuring and burning cars in a conspiracy to fraudulently collect insurance proceeds. At trial, the government first presented evidence that the defendants conspired to burn a car belonging to Jimmy Sicurella. The FBI learned of the insurance fraud scheme

and mounted a "sting" operation using a government informant, whereby a second car was also burned. The second car belonged to the United States government, but the defendants were told it was owned by the informant's brother-in-law. A jury found both LaPorta and Sicurella guilty on all five counts of the indictment.

Defendants now ask the court to reconsider motions heard and denied prior to trial. They first urge the court to dismiss their convictions under Counts I, IV, and V of the Second Superseding Indictment (Item 30), claiming that the government: 1) incorrectly indicted them under 18 U.S.C. § 844(h)(1); 2) consented to the burning of federal property; and 3) failed to prove that the defendants knew the car was owned by the government, a requisite element of this specific intent charge. They assert that if the court finds these counts should be dismissed, it should also find that there was an unnecessary spillover to Counts II and III. Additionally, with respect to Counts II and III, defendants claim that 18 U.S.C. § 1341 was not an appropriate statute to use as a predicate for a violation of § 844(h)(1) under the circumstances of this case. Therefore, they seek dismissal of the entire indictment against them or, in the alternative, a new trial. They also ask the court to make a finding that there is a substantial likelihood that their motion for a new trial or acquittal would be granted in order to reimpose bail pending sentencing.

## DISCUSSION

### I. Indictment under § 844(h)(1)

Count IV of the Second Superseding Indictment (Item 30) charges the defendants with intentionally setting fire to a vehicle owned by the United States in violation of 18 U.S.C. §§ 1361 & 2. Section 1361 authorizes the Attorney General to prosecute, "[w]hoever willfully injures or commits any depredation against any property of the United States ..." (1984).

Count V of the Indictment charges that the defendants, "willfully use[d] fire to commit a felony ... charged in Count Four of this indictment," in violation of the Organized Crime Act, 18 U.S.C. 844(h)(1). Item 30 at 12. Section 844(h)(1) authorizes punishment for "[w]hoever uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States" (1993).

Defendants first argue that they were improperly indicted in Count V under § 844(h)(1), using 18 U.S.C. 1361 as a predicate felony, because Congress specifically enacted § 844(f) for the purpose of prohibiting destruction of government property by fire. Subsection (f) states:

Whoever maliciously damages or destroys, or attempts to damage or destroy by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned, possessed, or used by, or leased to, the United States ... shall be imprisoned for not more than ten years....

Defendants assert the well-established rule of construction that a specific statute must be given precedence over a general one. *Busic v. U.S.*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). They argue that § 844(f) specifically refers to destruction of *government* property by fire, while § 844(h)(1) speaks only generally about the use of fire to commit another felony.

Defendants also contend that § 1361 cannot be used as the predicate felony for § 844(h)(1) under these circumstances. Section 1361 prohibits willful damage to federal property, and § 844(h)(1) provides for an additional sentence when the damage is done by fire. Defendants claim that subsection (f) precludes the use of §§ 1361 and 844(h)(1) because § 844(f) was enacted precisely for this situation.

In support of their argument, defendants point to the statutory language on its face as well the legislative history of 844(f) as reported by the House Judiciary Committee. H.R.Rep. No. 1549, 91st Cong., 2d Sess. 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007. The report explains that Title XI of the Organized Crime Control Act, PL. 91–452 (1970) was enacted to reduce "the hazards to persons and property associated with the

misuse of explosives...." [1] *Id.* at 4040–41. Section 844 of the Act "sets the penalties for violation of the regulatory provisions ... and creates certain offenses pertaining to the unlawful use of explosives." *Id.* at 4045. Subsection (f) was included because: "Willful destruction of Government property by any means is now prohibited by 18 U.S.C. 1361.... However, because use of explosives is so inherently dangerous to life, it is desirable to have specific legislation dealing with destruction by explosives...." *Id.* at 4046. Defendants claim that this explanation given in the legislative report, combined with the specific language of the subsection, clearly indicates Congress's intent to have § 844(f) preempt any other prosecution when the only crime committed is the destruction of government property. Item 71 at 1. In other words, § 844(f) must be read to preempt § 1361 under the facts of this case, so that the latter section cannot be used as an underlying felony for a § 844(h)(1) in order to charge destruction of government property by fire. *Id.* at 3.

As further support, defendants provide a long list of cases in which defendants were charged and convicted under subsection (f) for burning or bombing government property. They assert, and it appears, that there are no reported cases in which § 844(h)(1) with a § 1361 predicate was used for this specific offense. Item 67, ¶ 8.

The government counters that § 844 offers a choice of subsections for indictment of this crime.

> [W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.

*U.S. v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979) (citations omitted). The government argues that the defendants' interpretation of the statute is unsupported by any authority and that their real interest is in avoiding the mandatory minimum sentence which § 844(h)(1) carries. Item 70 at 2.

The court is persuaded by the defendants' contention that the specific language of § 844(f), in combination with its legislative history, indicate that Congress intended this subsection to be used when government property is willfully damaged or destroyed by means of fire. The purpose of section 844 of the Organized Crime Control Act of 1970 was to deter the use of explosives because of their inherent danger. In 1982, the statute was amended to include the use of fire. In explaining the inclusion of subsection (f) prohibiting the use of explosives (and later fire) to damage or destroy government property, the Congressional Report explicitly refers to § 1361 and the need to provide further deterrence.

 The only legislative statement on subsection (h)(1) is unhelpful.[2] However, subsection (h) must be read as part of the whole statute, "since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.,* —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991). Unlike the other subsections of the statute, which make it a federal crime to transport, receive, threaten, or actually use explosives or fire to damage or destroy property, subsection (h) is designed to add an additional punishment when explosives or fire are used to commit federal felonies *other than the crimes of destruction of property by explosives or fire.* If the criminal action is itself damage to property and explosives or fire are used, the charge is covered by one of the other subsections as, in this case, the destruction of federal property is covered by subsection (f). The explanation by Congress that subsection (f) was enacted to cover the type of activity already proscribed by § 1361 when explosives or fire was involved underscores this interpretation. To read subsection (h) otherwise would be to negate the necessity of subsection (f) altogether, since

---

1. Pl. 91–452 was amended in 1982 to include the use of fire.

2. House Report 91–1549 explains that the intent of § 844(h)(1) is to extend to explosives the stringent controls placed over firearms by the 1968 Gun Control Act. 1970 U.S.C.C.A.N. at 4046.

subsection (h) with the predicate of § 1361 would cover every circumstance that subsection (f) covers.

A review of recent cases involving convictions under § 844(f) and (h)(1) illustrates this difference between the two subsections. The court acknowledges that the government is under no obligation to follow other jurisdictions to determine the best statute for indictment in a particular case, but nevertheless finds other examples of the statute's usage edifying.

In every case in which (h)(1) is charged, fire was the means for destroying property in order to commit a felony *other than the destruction of property. See, e.g., U.S. v. Karlic,* 997 F.2d 564 (9th Cir.1993) (use of explosive to commit larceny); *U.S. v. Fiore,* 821 F.2d 127 (2d Cir.1987), and *U.S. v. Flowers,* 995 F.2d 315 (1st Cir.1993) (use of fire to commit mail fraud); *U.S. v. Montgomery,* 998 F.2d 1011 (4th Cir.1993), and *U.S. v. Gresser,* 935 F.2d 96 (6th Cir.1991) (use of fire to violate civil rights). Subsection (f), on the other hand, is used for destruction of *government* property by explosives or fire, *i.e.,* for political purposes. *See, e.g. U.S. v. Eichman,* 957 F.2d 45 (2d Cir.1992); *Laaman v. U.S.,* 973 F.2d 107 (2d Cir.1992).

Counts II and III of the indictment in this case follow these precedents. They charge the defendants with a violation of § 844(h)(1) with a predicate felony of § 1341 for burning a private car and using the federal mails to fraudulently claim insurance proceeds. However, Counts IV and V charge that defendants used fire to destroy a government-owned car. Section 844(f) provides specifically for this crime on its face. Congressional intent expressed in the legislative history that the subsection be used to cover § 1361-type crimes involving the use of fire or explosives precludes indictment for this offense under § 844(h)(1) with a predicate § 1361 felony. Therefore, Count V shall be dismissed, and the language in Count I applicable to the § 844(h)(1) charge for the government car shall be stricken.

*II. Challenges to the § 1361 Conviction*

*A. Preemption by § 844*

■ Defendants further ask the court to find that § 844(f) preempts the use of § 1361 when fire or explosives are the means of destruction, and to strike Count IV of their indictment as well. They cite the same legislative history discussed above to argue that Congress intended that § 844(f) be used exclusively when federal property is damaged by fire.

■ The explanation in the Congressional report for the passage of § 844(f), as quoted above, does suggest that subsection (f) is offered as more specific legislation designed to punish damage to government property when fire or explosives are involved. 1970 U.S.C.C.A.N. at 4045. However, there is no language in either the statute itself or the legislative history which precludes the use of § 1361. The general rule is that overlapping statutes "should be construed to coexist ... provided there is no contrary legislative intent and no repugnancy between the provisions." *United States v. Bradley,* 812 F.2d 774, 779 (2d Cir.), cert. denied, 484 U.S. 832, 108 S.Ct. 107, 98 L.Ed.2d 67 (1987), citing *United States v. Batchelder,* 442 U.S. 114, 122, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979). "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Traynor v. Turnage,* 485 U.S. 535, 548, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1988). In the face of such strong sentiment against repealing a statute by implication, this court declines to find § 1361 preempted for the purposes of this conviction.

*B. Knowledge Requirement*

■ Defendants next urge that Count IV be stricken because the prosecutor did not prove that they knew the car was government property when it was burned and this knowledge is a requisite element under § 1361. They cite *U.S. v. Bangert,* in which the Eighth Circuit held that to prove defendants violated this statute, the government must show that "the [property] that was burned was owned by the government; that there was actual damage done to the [proper-

ty]; and that the defendants burned the [property] with knowledge that they were violating the law." 645 F.2d 1297, 1305 (8th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981). The *Bangert* court upheld the conviction because it found that the first two prongs of the test were satisfied and "there was substantial evidence from which the jury could infer that the defendants knew the flag they burned was a flag owned by the United States government." *Id.* Defendants here claim that since they did not know the "sting" car was government property, they did not have knowledge that they were violating § 1361.

The government concedes that it could not prove either defendant knew the "sting" car belonged to the federal government. However, it argues that the element of willfulness which must be proven in this specific intent crime (*see U.S. v. Jones*, 607 F.2d 269 (9th Cir.1979)) goes to the intent to damage or destroy the car using fire, not to knowledge that the vehicle was government property. The government cites *U.S. v. Briddle* in support of its theory. "To convict the defendants, the jury needed to find (a) damage in excess of $100, and (b) willful commitment of such damage." 443 F.2d 443, 447–48 (8th Cir.1971). The *Bangert* court refers to the *Briddle* decision with approval. 645 F.2d at 1305.

In most § 1361 cases, the issue of whether or not the defendants knew the property they damaged belonged to the federal government does not arise because property ownership is obvious. *See, e.g., McFadden v. U.S.*, 814 F.2d 144 (3rd Cir.1987) (post office bombing); *Eichman*, 957 F.2d 45 (flag-burning at a military recruitment center). Defendants' argument that they did not have the requisite knowledge that the car they burned belonged to the government is one of first impression. Unlike other cases, the "sting" car here had no markings to identify it as government property, and it is uncontested that the defendants believed it belonged to the informant's brother-in-law.

■ A comparison of the scienter requirements of similar statutory crimes lends support to the government's view of what constitutes necessary knowledge. When a federal agent is assaulted, the government need not prove that the defendant knew his or her victim worked for the government to be charged under 18 U.S.C. § 111 (*U.S. v. Feola*, 420 U.S. 671, 684, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975); *U.S. v. Padilla*, 961 F.2d 322 (2d Cir.1992)) or § 111 (*U.S. v. Alvarez*, 755 F.2d 830 (11th Cir.), *cert. denied*, 474 U.S. 905, 106 S.Ct. 274, 88 L.Ed.2d 235 (1985). Similarly, a defendant may be convicted of theft of government property under 18 U.S.C. § 641 without proof that the defendant knew the property belonged to the government. *U.S. v. Jermendy*, 544 F.2d 640 (2d Cir.), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1976). "[D]ue process requirements of scienter are not automatically violated because a certain element of the crime is not known to the defendant.... Having chosen to engage in wrongful conduct, the defendant may not complain that facts out[side] his knowledge brought into play federal penalties or enhanced punishment." *U.S. v. Bolin*, 423 F.2d 834, 837 (9th Cir.1970).

However, this liability is not absolute. In *U.S. v. Young*, 464 F.2d 160 (5th Cir.1972), an African–American defendant driving in Jackson, Mississippi, was forced to pull to the side of the road by two FBI agents in an unmarked car. The agents claimed they flashed their badges at the defendant while pulling alongside his car, then stopped diagonally in front of him to prevent him from fleeing. The defendant rammed his car into the right front door of the agents' car as one of the agents was opening the door. The defendant was convicted under § 111 for assaulting a federal agent and § 1361 for willfully damaging federal property.

Young claimed that he did not know the two white men who had forced him to the side of the road were FBI agents. He rammed their car because he feared for his safety and wanted to get away. He appealed his conviction, claiming that he should have been permitted to present this defense to the jury. The Circuit Court agreed. Discussing the scienter requirement for § 111, it held that:

When there is no doubt of the defendant's unlawful intention, knowledge of the

official capacity of the victim is invariably unnecessary; the assailant takes his victim as he finds him. But if the defendant asserts a lack of intention or wilfulness based upon ignorance of the identity of the victim and ignorance of the victim's official privilege to interfere with the defendant's person or freedom of movement, the jury must be allowed to consider the defendant's evidence tending to show that he was ignorant of the official capacity of the victim. For only then can the jury give fair consideration to whether the assault was an intentional act wilfully done without legal excuse.

464 F.2d at 163 (citations omitted); *See also U.S. v. Goldson,* 954 F.2d 51 (2d Cir.1992). In other words, if the action taken by a defendant could be justified *but for* the fact that the victim was a federal agent, the defendant must be permitted to present evidence of such a defense.

This common sense approach is appropriate to violations of § 1361 as well. Defendants in this case claim that they arranged to burn the "sting" car on the mistaken belief that it belonged to a private citizen, the informant's brother-in-law. If their activity would have been lawful but for the fact that the "sting" car was actually government property, they should have been permitted to present this defense to the jury to attempt to cast reasonable doubt that they had the requisite knowledge to violate § 1361.

The facts here make clear that the defendants knew they were burning the car as part of an illegal scheme to collect insurance money. Indeed, this was the only reason the government's sting operation succeeded. The government proved that the car belonged to the United States and that it was wilfully destroyed by the defendants in order to commit unlawful insurance fraud. Under these circumstances, the defendants' ignorance of the car's actual ownership cannot void a conviction under § 1361, because they willfully burned the car and knew what they were doing was unlawful.

### C. Governmental Consent

 Defendants further claim that § 1361 cannot apply to destruction of govern-

ment property when an agent of the government authorizes or consents to the defendants' actions. In *U.S. v. Bennett,* the Second Circuit Court held that a defendant charged with interstate transportation and sale of stolen property could use as a defense his belief that the owner of the property had consented to or authorized his actions. 665 F.2d 16 (2d Cir.1981). Defendants argue that since the government provided them with the "sting" car and authorized its informant to ask them to burn it, they should have been permitted to raise the issue of consent or authorization as a defense.

The government argues that the defendants knew and believed that they were burning an automobile. The fact that the government knew its vehicle was going to be burned did not amount to consent. In the Second Circuit, appeals "based on Government involvement in the undercover supplying of contraband have not been successful ... [when] the Government's role was limited to facilitating what the appellants had started and were executing." *U.S. v. Asencio,* 873 F.2d 639, 641 (2d Cir.1989) (citations omitted). Although the defendants argue that a different result should be reached when the item is not contraband, *Asencio* appears to be controlling here. The government did not "authorize" the defendants to burn its car any more than it "authorizes" the sale of illegal drugs merely by the providing the means for the illegal activity. The government correctly states that the FBI agents provided the defendants with a car, but defendants willingly committed the crime as soon as the opportunity presented itself.

### III. Spillover and Other Issues

Defendants argue that if the court agrees that Counts I, IV, and V of their conviction must be dismissed, they are entitled to dismissal of Counts II and III as well due to the spillover effect created by joining the evidence of conspiracy to burn and destruction of both the private and government cars. Since the court has determined that only Count V should be dismissed, leaving the conviction of Counts I and IV for conspiracy and willful damage to federal property intact, the effect of spillover is no longer at issue.

Defendants have introduced no new arguments or authority to support the other motions which were previously denied by the Magistrate Judge or this court, and I find no need to revisit them at this stage.

■ Finally, defendants request the court to reimpose bail set for them prior to trial. Since I cannot make a finding that there is a substantial likelihood that their remaining motions to dismiss their conviction on Counts I to IV would be granted by another court, I must continue to deny bail. *See U.S. v. McAllister*, 974 F.2d 291 (2d Cir.1992); 18 U.S.C. 3143(a) (1993).

### CONCLUSION

Count V is dismissed, and the language in Count I which specifically refers to the charge under § 844(h)(1) for the government car only are hereby stricken from the Second Superseding Indictment. All other motions by defendants to dismiss their conviction on the remainder of the conspiracy Count I and Counts II, III and IV are denied.

Defendants' request for reimposition of bail pending sentencing is also denied.

So ordered.