**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Todd J. GRESSER (90–3414/3505) and Timothy L. Singer (90–3422/3505), Defendants–Appellants, Cross–Appellees.**

**Nos. 90–3414, 90–3422 and 90–3505.**

United States Court of Appeals,
Sixth Circuit.

Argued April 30, 1991.

Decided May 28, 1991.

Clarence B. Taylor, Asst. U.S. Atty., Office of U.S. Atty., Cleveland, Ohio, Miriam R. Eisenstein (argued), Dennis J. Dimsey, U.S. Dept. of Justice, Civil Rights Div., Appellate Section, Washington, D.C., for plaintiff-appellee, cross-appellant.

Richard A. Damiani, Cleveland, Ohio, David J. Gornik (argued), Eastlake, Ohio, for defendant-appellant, cross-appellee Todd J. Gresser.

Stewart I. Mandel, Cleveland, Ohio, Donald Green (argued), Cleveland Heights, Ohio, for defendant-appellant, cross-appellee Timothy L. Singer.

Before KEITH and MILBURN, Circuit Judges, and COHN, District Judge.[*]

MILBURN, Circuit Judge.

Defendants-appellants Todd Gresser and Timothy Singer appeal their convictions for conspiracy to violate the rights of blacks to hold and occupy their dwellings, violations of 18 U.S.C. § 241; use of force and threat of force in furthering racial discrimination, violations of 42 U.S.C. § 3631(a); and the use of fire or explosives in the commission of a felony, violations of 18 U.S.C. § 844(h)(1). The convictions are all based on a cross-burning incident across the street from Singer's home. The government cross-appeals the sentences imposed. For the reasons that follow, we affirm the judgments of conviction, but we vacate the sentences and remand.

## I.

### A.

A federal grand jury charged Singer and Gresser in a three-count indictment returned September 21, 1989. The first count alleged a conspiracy in violation of 18 U.S.C. § 241 to interfere with the rights of black citizens to hold and occupy their dwellings without injury, intimidation, or interference because of their race. The second count charged the defendants with violating 42 U.S.C. § 3631(a) by employing force and threat of force to willfully intimidate and interfere with blacks because of their race regarding their occupation of their dwellings. The third count charged the defendants with violating 18 U.S.C. § 844(h)(1) by using fire to commit the felony of conspiring to violate the civil rights of others.

On January 22, 1990, after a joint trial which began on January 17, 1990, a jury found both defendants guilty of all counts. On April 30, 1990, the district court sentenced Singer to thirty months on counts 1 and 3 with a concurrent sentence of twelve months on count 2 and three years of supervised release. Gresser was sentenced to twenty-seven months imprisonment and three years supervised release. The court entered judgment including sentence on May 2, 1990, and defendants Gresser and Singer filed notices of appeal on May 4, 1990, and May 7, 1990, respectively. The government filed a timely cross-appeal challenging the sentences.

### B.

On August 12, 1988, at about 9:30 p.m., Donna and Jennings Mason[1] were sitting on their front porch at 1629 Ute Avenue, Massillon, Ohio, when they observed their neighbor of over five years, defendant Singer, pulling out of his carport. Singer was accompanied by a female friend named Carol Johnson and at least one other person. When two black youths came down the street with a large radio, that was playing loudly, Johnson yelled, "Will you damn niggers turn that mother ------ music down!" An argument ensued between the black youths and the white occupants of the automobile. One of the blacks, identified by Singer as Eric King, hit Singer with a piece of concrete, injuring his face. Johnson took a lead pipe out of the car for Singer to use as a weapon, but he declined.

Sometime during the altercation, Donna Mason called the police. When the police

* Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Donna and Jennings Mason are black as are Terrence Jaycox and Elenore Peterson mentioned later.

arrived, the two black youths ran away. Singer was enraged and yelling racial epithets such as "you mother ------ niggers come out now." Singer told the investigating officer, "If you G-- D--- cops don't take care of it, I know who he is. I know where he lives. I'll go down there myself and I'll take care of the son-of-a-bitch myself." Tr. 146. The record shows that Eric King lived about a mile and one-half away from Singer. The police officer left the scene after unsuccessfully attempting to calm Singer down.

Singer and Johnson also left the scene but returned a short time later with another man. The unidentified man paced around Singer's yard brandishing a rifle or a shotgun. Singer and Johnson walked over to the Masons who were sitting on their front porch. Singer stated that he had a gun and a half stick of dynamite in his pocket and was going to "blow up all those mother ------ niggers." Tr. 46. Mr. Mason noticed that Singer's pocket was bulged. Tr. 68.

A short time later, defendant Gresser arrived at Singer's home. Singer yelled racial epithets from his yard, and the Masons heard sounds coming from behind Singer's garage which they identified as nails being pounded into boards. Jennings Mason later saw Singer and Gresser "stumped over carrying something" that appeared to be a large piece of wood about nine feet long. Thereafter, there was a loud explosion which rattled the dishes in the Masons' cabinets, and a cross went up in flames. At the time of the explosion and moments later, the Masons heard more racial epithets, and Mr. Mason saw Singer and Gresser running back toward Singer's house.

Terrence Jaycox, who lived at 1620 Ute Avenue across the street from the Masons and Singer, was watching television late at night when he saw the orange light of a fire. He looked out the window and saw a cross burning on the vacant lot next to his property. At about the same time, he heard and felt an explosion. Jaycox saw three men running away from the scene. During this time Jaycox also heard a "lot of racial slurs" such as, "---- you nigger. We going to get you." Tr. 99.

Elenore Peterson, who also lived adjacent to the vacant lot, was awakened early in the morning of August 13, 1988, by something "real bright." When she looked out the window, she saw a cross burning. She also heard a loud explosion which rattled the windows. The next morning Peterson observed racial epithets spray painted on the back of her house. Similar epithets were painted on adjoining houses.[2]

FBI agent William Stutler conducted an investigation following the incident. He obtained exemplars of spray painting from Singer and Gresser and sent them to the FBI laboratory, but the results were inconclusive. A background check of Singer revealed no affiliation with any white supremacy group. Stutler did not find wood similar to the cross on Singer's property, nor did he find any spray paint cans.

After the close of the government's proof, the defendants rested and moved for judgments of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The court denied the motions.

### C.

Defendants were sentenced under the United States Sentencing Guidelines. In sentencing the defendants, the district court utilized the base offense level of thirteen points which corresponded with the presentence investigation report ("PSI") "total offense level" of thirteen. In the PSI the probation officer who prepared the report recognized that all three counts of the indictment were "closely related" counts which should be grouped, and recommended thirteen as the base level for the conspiracy under the United States Sentencing Guidelines § 2H1.2(a)(1) ("U.S. S.G."). The probation officer reached this result by refusing to treat the other of-

---

2. The content of these messages were, *e.g.,* "KKK," "nigger die," and "KKK, ------ you, nig-ger."

fenses as underlying offenses thereby avoiding the alternative possibility under 2H1.2(a)(2) of "2 plus the ... underlying offense." The government objected that language directing the court to "[a]pply the greater" of the alternatives meant that the court should begin with the offense level for the use of fire and explosives count as the underlying offense (2K1.4), increase it by two for the use of force charge under 2H1.3(a)(1) as the intermediate offense underlying the conspiracy, with an additional two offense levels added under section 2H1.2(a)(2) for the conspiracy as the principal offense. The district court rejected the government's arguments without explanation.

Instead, the court began with a base offense level of thirteen and enhanced Singer's sentence two levels because of his being the leader of a conspiracy, *see* U.S.S.G. § 3B1.1(c), and an additional two levels because of "victim vulnerability." *See* U.S.S.G. § 3A1.1. Gresser's base offense level of thirteen was raised two levels for "victim vulnerability."

The principal issues presented in this appeal are (1) whether the evidence was sufficient to support the convictions, and (2) whether the district court erred in calculating the offense level by failing to treat the 18 U.S.C. § 844(h)(1) conviction as an underlying offense.

## II.

### A.

In reviewing an appeal from a criminal conviction on the ground that the evidence is insufficient to support the verdict, we determine "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The test is the same whether the evidence is direct or circumstantial. *Id.*

■ The interpretation of the United States Sentencing Guidelines to determine whether section 2K1.4 of the guidelines should apply to cross-burning is comparable to statutory interpretation. *United States v. Worthy,* 915 F.2d 1514, 1516 (11th Cir.1990). Therefore, the district court's interpretation of the guidelines is subject to de novo review. *Id.; see United States v. Rodriguez,* 882 F.2d 1059, 1065–67 (6th Cir.1989) (determination of whether factors cited to justify departure satisfy statutory requirement that they "not [be] adequately taken into consideration by the Sentencing Commission" is given plenary review), *cert. denied,* ── U.S. ──, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990).

### B.

■ Defendant Singer acknowledges in his brief at page four that on the morning of August 13, 1989, a large wooden cross was burned across the street from his home and an explosion was set off. Singer's brief admits his being outraged at the two black youths with whom he was involved in an altercation; however, Singer insists that his "rage was directed at his attackers and not blacks in general." Singer attempts to make much of the fact that an investigation of his property did not produce spray paint cans or wood fragments from the cross.

As to the conspiracy count, Gresser tries to lean on Singer's argument, claiming support from the rule that acquittal of one conspirator in a two-person conspiracy requires acquittal of his alleged co-conspirator despite the fact that both he and Singer were convicted of the conspiracy count. Gresser also argues that none of the witnesses in this case were able to testify to knowledge of the willful formation of a conspiracy.

Concerning the second count, Gresser's brief asserts: "The only link between Gresser and the civil rights violations is the positive identification of his van at the Singer residence, which is not a crime. The Government's case is based on evidence that is circumstantial at best."

With regard to the third count charging the use of fire to commit a felony, Gresser renews his contention that Singer's animosity was directed only at Eric King and not at blacks in general. Gresser also complains that the government ignored several viable suspects and claims that no witness was able to attribute threatening statements to him or link him to the cross-burning. In a "last-ditch" effort to support his contention, Gresser states: "There is no conclusive evidence that there was an explosion, only testimony as to a loud noise."

The contention that Singer's rage was directed only at one black youth rather than blacks in general is unpersuasive and belied by his actions. As the government points out, "[W]hatever provoked Singer's wrath, he expressed it entirely in racial terms, shouting racial epithets against blacks as a group." A reasonable juror could conclude that Singer instigated the cross-burning notwithstanding the absence of wood fragments and empty paint cans at Singer's home. Moreover, construing the evidence in a light most favorable to the government, Singer chose an age old symbol of racism, and, rather than burning the cross at or near the home of his attacker, Eric King, Singer waged his racist battle approximately a mile and one-half from King's home in the vicinity of Singer's own house and adjacent to the homes of his black neighbors.

■■■ Gresser's arguments are also unpersuasive. " 'The existence of a criminal conspiracy, need not be proven by direct evidence, a common plan may be inferred from circumstantial evidence.' Furthermore, once a conspiracy has been established, only slight evidence is necessary to implicate a defendant." *United States v. Poulos,* 895 F.2d 1113, 1117 (6th Cir.1990) (quoting *United States v. Meyers,* 646 F.2d 1142, 1144 (6th Cir.1981)). A tacit understanding is enough to show a conspiratorial agreement. *United States v. Hughes,* 891 F.2d 597, 601 (6th Cir.1989). A conspirator need not have personally performed the deed for which he is being held liable. A conspirator can be held criminally liable for the actions of his co-conspirators committed during and in furtherance of the conspiracy. *See United States v. Robinson,* 651 F.2d 1188, 1195 (6th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 183 (1981).

The record shows that Singer threatened to blow up all blacks and announced that he had one-half stick of dynamite. Shortly thereafter, Gresser arrived at Singer's home followed by sounds from the area of Singer's garage which sounded like the hammering of nails. Next, Singer and Gresser were seen carrying a piece of wood comparable in size and appearance to the cross which was later seen burning. While the pounding was going on up until the time the cross was burned, voices were heard from Singer's yard shouting racial epithets similar in content to those found the next morning spray painted on houses in the neighborhood. Immediately following the explosion, Gresser and Singer were seen running into Singer's yard.

These facts are sufficient to support a reasonable juror in the inference that Singer and Gresser had a tacit conspiratorial objective to intimidate the black persons living in the vicinity of Singer's home. The testimony of Ms. Peterson and Donna Mason that they were fearful showed that the conspirators did indeed intimidate black residents. Gresser's participation was sufficient to implicate him in the conspiracy. It matters little who actually performed the act of igniting the cross and detonating the explosives, and it is of little consequence (as regards this appeal) that others may have been involved. Thus, we hold that there was sufficient evidence to support the convictions.

## C.

We next address the government's challenge to the calculation of the defendants' offense levels and the sentences imposed. Each defendant was convicted of three counts. In a case involving multiple convictions, the proper starting point is to determine the offense level for each conviction. U.S.S.G. § 1B1.1(d). If, as in this case, the convictions are closely related under section 3D1.2(a–c), the defendant is

then sentenced according to the highest offense level of the group. *Id.* § 3D1.3(a).

Defendants were convicted of conspiring in violation of 18 U.S.C. § 241 to intimidate black dwelling holders because of their race. The offense level for that conviction is set out in section 2H1.2 which provides, in relevant part:

*Conspiracy to Interfere with Civil Rights*

(a) Base Offense Level (Apply the Greater):

(1) **13**; or

(2) **2** plus the offense level applicable to any underlying offense.

The phrase " '2 plus the offense level applicable to any underlying offense' means 2 levels above the offense level (base offense level plus any applicable specific offense characteristics contained in the particular guideline in Chapter Two) for any underlying criminal conduct." U.S.S.G. § 2H1.1, comment. (n.1). For example, "If the underlying offense was damage to property by means of arson or an explosive device, the offense level from § 2K1.4 (Arson; Property Damage by Use of Explosives) would first be determined and 2 levels would be added." *Id.*

Defendants were also convicted of violating 42 U.S.C. § 3631 by intimidating black dwelling holders by force or threat of force. Guideline section 2H1.3 sets the offense level for that offense as follows:

*Use of Force or Threat of Force to Deny Benefits or Rights in Furtherance of Discrimination*

(a) Base Offense Level (Apply the Greatest):

(1) **10**, if no injury occurred; or

. . . .

(3) **2** plus the offense level applicable to any underlying offense.

 Finally, defendants were convicted of violating 18 U.S.C. § 844(h)(1) by using fire to commit a felony.[3] Defendant Singer[4] strongly disagrees with the government's contention that section 2K1.4 applies to that offense on the facts of this case. Section 2K1.4 provides, in relevant part:

*Arson: Property Damage By Use of Explosives*

(a) Base Offense Level: **6**

(b) Specific Offense Characteristics

. . . .

(4) If the defendant used fire or an explosive to commit another offense that is a felony under federal law, or carried explosives during the commission of any offense that is a felony under federal law (*i.e.*, the defendant is convicted under 18 U.S.C. § 844(h)), increase by 7 levels.

It is clear that if the district court had applied section 2K1.4, it would have arrived at an offense level of thirteen for the "use of fire" aspect. Treating that offense as the underlying offense of either of the other offenses would have produced an offense level of at least fifteen. The government argues that "the 'use of fire' arson guideline [section 2K1.4] applies and is the 'underlying offense' for purposes of sentencing in cross-burning cases." Stressing the title of the heading, defendant Singer argues that section 2K1.4 does not apply because his crime did not involve arson under any accepted definition of the term.[5]

An argument identical to Singer's was rejected by the Eleventh Circuit in *United*

---

**3.** Effective November 18, 1988, 18 U.S.C. § 844(h)(1) called for a sentence of at least five years. The government concedes that given the date of the offense, the five-year rule cannot be applied without violating the *ex post facto* clause of the Constitution. *See Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *United States v. Worthy,* 915 F.2d 1514, 1516 n. 7 (11th Cir.1990).

**4.** Defendant Gresser has not responded to the government's cross-appeal.

**5.** Singer seems to weaken his position later by making the meritless assertion that the guideline must be construed strictly against the government because it is ambiguous as to whether it applies to offenses outside the confines of arson.

*States v. Worthy*, 915 F.2d 1514 (11th Cir. 1990). In *Worthy*, the defendants pled guilty to conspiring to violate the civil rights of others by burning a cross at the residence of a black family. The plea agreement included a stipulation to a base offense level of seventeen. "The district court rejected the stipulated base offense level of 17, in part on the ground that the criminal conduct underlying the defendants' conspiracy did not include the use of fire in the commission of a federal felony under section 2K1.4 of the Sentencing Guidelines." *Worthy*, 915 F.2d at 1516. The Eleventh Circuit held "that the district court erred in refusing to apply the base offense level for the use of fire in commission of a federal felony, as an offense underlying the defendants' conspiracy to violate civil rights." *Id.* at 1517.

The Eleventh Circuit explained:

The district court's emphasis upon the fact that the acts of the defendants did not constitute arson per se, apparently derives from the fact that the heading to section 2K1.4 reads "Arson; Property Damage By Use of Explosives." While this title would certainly indicate that the section was intended to cover offenses that fell under the legal definition of arson, nothing in section 2K1.4 or its commentary indicates that it was intended to apply only to such offenses. In fact, section 2K1.4(b)(4) specifically describes the use of fire in the commission of a federal felony, without limiting its description to instances where the use of fire is technically arson. From such clear and unambiguous language we can only conclude that the use of "fire or an explosive to commit another offense that is a felony under federal law," whether or not such use of fire constitutes legal arson, falls under the ambit of section 2K1.4(b)(4). Accordingly, we reverse the district court's finding that section 2K1.-4(b)(4) did not apply in computing the defendants' base offense level under the Sentencing Guidelines.

*Id.*

As we view the *Worthy* approach as consistent with the language of section 2K1.4(b)(4) which applies by its plain terms to convictions "under 18 U.S.C. § 844(h)," we adopt it. Where the government obtains convictions after a cross-burning incident for the offenses set out in 18 U.S.C. § 241, 42 U.S.C. § 3631, and 18 U.S.C. § 844(h), respectively, "[t]here are three Guidelines used to derive the offense level, [viz.], § 2H1.2 for the conspiracy, § 2H1.3 for the violation of the Fair Housing Act ..., and § 2K1.4 for the use of fire in commission of a felony." *United States v. Skillman*, 922 F.2d 1370, 1377 (9th Cir. 1990) (footnotes omitted) (involving a challenge to enhancement of the sentences based on victim vulnerability). Thus, we hold that section 2K1.4 applies to the 18 U.S.C. § 844 conviction in this case and that the conviction was an underlying offense of the conspiracy.

■ With remarkable subtlety, the government attempts to lead the court one step further. Citing no authority other than its reading of the guidelines, the government asserts that the total offense level should be seventeen. The government arrives at this figure through a stair-step approach, asserting that the "use of fire" offense (18 U.S.C. § 844(h)(1)) was the underlying offense of the crime of using force or threat of force to discriminate (42 U.S.C. § 3631(a)), which was in turn an underlying offense of the criminal conspiracy (18 U.S.C. § 241).

The government's position is consistent with the indictment which charges a conspiracy, the object of which was to violate civil rights by force or threat of force, the means of which was, in part, the use of fire. *Cf. United States v. Salyer*, 893 F.2d 113, 115 (6th Cir.1989) (holding that racial factor was not considered in conspiracy charges based on a cross-burning). The government's position also appears to have been accepted in principle, if not by holding, in the Eleventh and Ninth Circuits. *See Worthy*, 915 F.2d at 1516 & nn. 3–6 (recognizing in cross-burning case that two offenses underlie the conspiracy and explaining methodology of calculating the offense level of 17); *Skillman*, 922 F.2d at 1377 nn. 8–10, 1379 n. 12. Research has revealed no contrary authority, and nothing

in the guidelines precludes the government's proposed method of stacking underlying offenses.

The problem with the government's position is that it essentially asks this court to sit as the sentencing court without giving the district court a chance to rule on the application of section 2H1.3. In a similar situation in *Worthy*, where the court had determined to vacate the sentence because of the district court's failure to apply section 2K1.4, the court remanded to the district court for reconsideration of the applicability of section 2H1.3 rather than directly rule on the issue itself. 915 F.2d at 1517. The *Worthy* court believed the remand was necessary to minimize confusion. We shall follow the same approach.

### III.

For the reasons stated, the judgments of conviction are AFFIRMED. However, the sentences are VACATED, and these consolidated cases are REMANDED for resentencing with instructions to treat each of the 18 U.S.C. § 844 convictions as an underlying offense, the base offense level of which is set in U.S.S.G. § 2K1.4, and to consider whether to treat the use of force conviction (42 U.S.C. § 3631(a)) as an additional (intermediate) underlying offense, thereby increasing the offense level an additional two points under U.S.S.G. § 2H1.3.