977 F.2d 583
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Elizabeth Lynn HAYNES, Defendant-Appellant.
 Nos. 91-5979, 91-6076.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1992.
 
 Before KEITH and SILER, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Elizabeth Lynn Haynes, was convicted by a jury for: (1) conspiring to deprive approximately 164 voter registrants ("registrants") of their constitutional rights to vote, to register to vote and to equal protection in violation of 18 U.S.C. § 241 (Count One); and (2) depriving seven (7) registrants of their constitutional rights to vote, to register to vote and to equal protection in violation of 18 U.S.C. § 242 (Counts Two--Eight). Defendant appealed her conviction, sentence and the denial of her post-conviction motions for a new trial. For reasons stated herein, we AFFIRM the judgment in all respects, except for the sentence, which is REVERSED.
 
 I.
 
 2
 In August, 1989, the Jefferson County Republican Party ("JCRP") sponsored a voter registration booth at the Kentucky State Fair, where citizens filled out voter registration cards ("cards") indicating their party affiliation. The JCRP volunteers collected and returned the cards to the JCRP Headquarters. Mark Snider, co-defendant and the JCRP executive director, separated approximately 164 Democrat and Independent registrants' cards from the Republican registrants' cards and remarked that he "wasn't about to turn in any Democrats." Snider submitted only the Republican cards to the Jefferson County Clerk. At Snider's instruction, Norma Wiedmar, the JCRP office secretary, hid the cards. In the November, 1989, local elections, seven registrants could not vote because their cards were not on record. Republican Rebecca Jackson won the election for Jefferson County Clerk, and Snider joined her staff as Chief Deputy Clerk soon thereafter.
 
 
 3
 In October, 1989, defendant began working at the JCRP Headquarters, first as a volunteer and later as the political director, a salaried position. After Snider left the JCRP, defendant became aware of the cards and informed Wiedmar that she was going to throw them away. She did not possess the cards until after the November, 1989, election. Defendant admitted at trial that she knew that: (1) the cards should have been submitted to the Jefferson County Clerk; (2) she could have submitted them; and (3) the registrants would not be able to vote without the submission of the cards. However, defendant hid the cards at her apartment and, after talking with Snider, agreed not to turn in the cards to the clerk. Defendant testified that soon after their conversation, Snider began making threats of suicide and harm to defendant and her family if she did not give the cards to him. During early 1990, defendant and Snider maintained a bizarre relationship which consisted of a pattern of Snider's requesting the cards, defendant's refusing, and Snider's "spanking" defendant for misbehaving, which resulted in defendant's giving Snider copies of the cards. Snider moved to Virginia but continued the Louisville meetings to avoid defendant's threatened disclosure to the media. These monthly meetings continued even after defendant was fired by the JCRP and had moved to St. Louis. Finally, when Snider said that he would submit the cards to the clerk's office, defendant returned them to Snider in May, 1990, but kept copies for her protection and to blackmail Snider and continue their relationship. The registrants were again denied their voting rights in the May, 1990, Kentucky primary election.
 
 
 4
 Prior to trial, defendant moved to present psychiatric testimony of her psychological inability to deal effectively with Snider's alleged abuse. When the government moved for a pre-trial psychiatric exam, defendant withdrew the evidence. At trial, Snider's counsel without objection questioned defendant and another witness, Paul Ground, about defendant's past psychiatric treatment. Moreover, in his closing statement, Snider's counsel referred to defendant's "long history of psychiatric treatment," to which defendant's counsel objected, arguing that the evidence had indicated defendant had received counseling only since the indictment. The district court overruled the objection.
 
 
 5
 Throughout the trial, defendant alleged that the government had selected her for prosecution due to her JCRP status. To support her argument, defendant attempted to present evidence of her bad relations with Jackson, but the court rejected the evidence as irrelevant. In August, defendant was sentenced to thirty (30) months based on an total offense level of nineteen (19) and a criminal history category of I.
 
 II.
 
 6
 To establish a conspiracy to interfere with civil rights, the government must prove that the defendant knowingly joined a conspiracy to injure, oppress, threaten or intimidate a victim with the intent to deprive him or her of a civil right and that an overt act was committed in furtherance of the conspiracy. See 18 U.S.C. § 241; Anderson v. United States, 417 U.S. 211 (1974). Defendant's informal agreements with Wiedmar to destroy the cards and with Snider not to return the cards to the clerk constituted circumstantial evidence of acts in furtherance of the conspiracy. See United States v. Skillman, 922 F.2d 1370, 1379 (9th Cir.1990), cert. denied, 112 S.Ct. 353 (1991). Even though defendant joined the conspiracy after the initial wrongdoing (the November election), her withholding of the cards was sufficient to establish her participation in the scheme. See United States v. Gresser, 935 F.2d 96, 101 (6th Cir.), cert. denied, 112 S.Ct. 239 (1991); United States v. Hoelscher, 914 F.2d 1527, 1534 (8th Cir.1990), cert. denied, 111 S.Ct. 971 (1991). Thus, the government presented sufficient evidence to support the jury's finding beyond a reasonable doubt that defendant conspired with Snider and Wiedmar to deprive the registrants of their rights to vote, to register to vote and to equal protection.
 
 III.
 
 7
 To establish a deprivation of constitutional rights, the government must show that: (1) defendant's acts deprived someone of a right secured by the United States Constitution or laws; (2) defendant's illegal acts were committed under color of law; (3) the victim was a state citizen; and (4) defendant acted willfully. United States v. Senak, 477 F.2d 304, 306 (7th Cir.), cert. denied, 414 U.S. 856 (1973). Action under "color of state law" includes a "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law." Williams v. United States, 341 U.S. 97, 99 (1951). The JCRP was authorized by state law to register voters, and defendant, by accepting the political director position, became a JCRP officer acting under the authority of state law in regard to voter registrations. Defendant admitted that she should have returned the cards and reported the wrongdoing but stated that she failed to do so due to Snider's alleged threats. Thus, the government presented sufficient evidence to support the jury's finding beyond a reasonable doubt that defendant deprived the seven registrants of their rights to vote, to register to vote and to equal protection.
 
 IV.
 
 8
 On the motion for a new trial, counsel may argue reasonable inferences from the evidence presented at trial. United States v. Keskey, 863 F.2d 474, 481 (7th Cir.1988). Only minimal psychiatric treatment evidence was presented at trial (perhaps erroneously), but defense counsel failed to object to its use. Thus, the district court properly found that the brief references to it in closing argument were sufficiently based on the limited evidence in the record. If the district court erred by not sustaining the objection in closing arguments, it would have committed harmless error at the worst, as it appears that any mention of psychiatric problems would have bolstered the defense of duress. Moreover, the prosecution did not mention the psychiatric problems. Accordingly, the district court's denial of defendant's motion for a new trial was not erroneous.
 
 V.
 
 9
 The district court was mostly correct in calculating defendant's total offense level under the United States Sentencing Guidelines ("USSG"). First, the court correctly applied USSG § 2H2.1(a)(2) "Obstructing an Election or Registration" to both violations, as this guideline's provisions specify that it applies to both 18 U.S.C. §§ 241 and 242.
 
 
 10
 Second, the district court's two-level upward adjustment for defendant's abuse of position of trust was proper, as: (1) defendant was a JCRP officer; (2) state law authorized the JCRP voter registration; (3) due to her position, defendant had access to the cards; and (4) defendant abused her position of public trust in a manner that "significantly facilitated the commission or concealment of the offense...." by withholding the cards. USSG § 3B1.3
 
 
 11
 Third, the district court's denial of an acceptance of responsibility downward adjustment of the base offense level was not clearly erroneous. USSG § 3E1.1; see United States v. Wilson, 878 F.2d 921 (6th Cir.1989) (clearly erroneous standard of review). Although defendant acknowledged her conduct, during the trial she repeatedly blamed Snider and Wiedmar for the criminal acts.
 
 
 12
 Fourth, the district court's denial of a downward adjustment of the base offense level for minimal participation in the offense was not clearly erroneous. See United States v. Daniels, 948 F.2d 1033 (6th Cir.1989) (clearly erroneous standard of review), cert. denied 112 S.Ct. 1279 (1992). Under USSG § 3B1.2, Application Note 2: "It is intended that the downward adjustment for a minimal participant will be used infrequently." We do not see that this is such an extraordinary case to warrant the four-level downward adjustment as a minimal participant. However, the district court was clearly erroneous in failing to grant a two-level reduction for a minor participant. A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, Application Note 3.
 
 
 13
 In this case, although Haynes would not be considered a minimal participant, she certainly is a minor participant, when her conduct is compared to Snider's or even to Wiedmar's. She joined the conspiracy after the initial concealment of the registration cards and returned the cards to Snider before the May, 1990, election. Therefore, she should have been granted a two-point decrease in her offense level under USSG § 3B1.2(b).
 
 
 14
 Finally, the district court properly found that defendant's additional arguments supporting a downward adjustment of the offense level was meritless. Defendant failed to present sufficient evidence that she committed the offense "in order to avoid a perceived greater harm," therefore, warranting a downward departure. See USSG § 5K2.11. Moreover, defendant's age, lack of prior criminal record, and the nonviolent nature of her crime were not factors supporting guideline departure. See USSG § 5H1.1.
 
 VI.
 
 15
 To establish selective prosecution, defendant must show: (1) that she was singled out while similarly situated violators were not charged; and (2) the selection was unfairly discriminatory or in bad faith. United States v. McMullen, 755 F.2d 65, 66 (6th Cir.1984), cert. denied, 474 U.S. 829 (1985). Defendant alleges that she was singled out for prosecution in retaliation for her frequent criticisms of the JCRP and ongoing conflicts with Jackson and other public officials, whereas Wiedmar, who also hid the cards, was not prosecuted. However, defendant's allegations are weakened by the fact that Snider, a former loyal Jackson employee, was charged and convicted for the same crime. As defendant failed to carry her heavy burden of establishing this defense, United States v. Hazel, 696 F.2d 473 (6th Cir.1983), her selective prosecution argument is without merit.
 
 VII.
 
 16
 The only error committed by the district court was in failing to give the defendant a two-point reduction for being a minor participant. Therefore, the sentence is reversed and this case remanded for further sentencing in accordance with this decision.
 
 
 17
 COHN, District Judge, concurring and dissenting.
 
 
 18
 This is a very bizarre case and I am not sure that the panel opinion fully describes the twists and turns of events beginning with voter registration by the Jefferson County Republican Party (JCRP) at the 1989 Kentucky State Fair. Be that as it may, I am constrained to agree that a jury could rightly have found Haynes guilty of conspiracy since she acted in furtherance of a conspiracy already in existence. Because a 30 month sentence seems excessive under circumstances where Haynes was not actually responsible for denying anyone the right to vote (she was not aware of the registration cards until after the November 1989 election and turned them over to Snider before the 1990 election and Snider at the time was Chief Deputy County Clerk of Jefferson County) it is important to look at the offense level (19)[1] which determined Haynes sentencing range. I believe the upward adjustment of two levels for abuse of a position of public trust, U.S.S.G. § 3B1.3, was clearly in error and the failure to give Snider a downward adjustment of two points for acceptance of responsibility, U.S.S.G. § 3E1.1, was clearly in error. Indeed, although I agree that a downward adjustment of two points for minor participation, U.S.S.G. § 3B1.2(b), should be made, I believe a good argument can be advanced for a downward adjustment of four points as a minimal participant, U.S.S.G. § 3B1.2(a). Haynes happened upon the registration cards. Had she simply left them sitting on the shelf it is doubtful she was guilty of anything. Her taking the cards home was not as an official of the JCRP. Her blaming Snider and Wiedmar for her plight does not denigrate her acknowledgement that what she did was wrong. She was significantly less involved than Snider or Wiedmar. As I calculate Haynes guideline range with the reduction required by the panel opinion on remand, she must be sentenced within a range of 24 to 30 months. A further reduction in her offense level by four points would have placed her sentence in a range of 8 to 14 months and made her eligible for a split sentence. This seems about right as punishment for an act which was more stupid than criminal. I would reverse the sentence of 30 months and remand the case for resentencing in the guideline range for offense level 11.[2]
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant's base offense level of 12 was increased by two levels for abuse of position and further increased by five levels because the multiple offenses as reflected in the multiple counts of the indictment were not grouped. I have not in this concurrence and dissent explored the possible prosecutorial manipulation implicated by the form of the indictment. It is certainly something that should be considered on resentencing even though defendant did not raise it as an issue on appeal
 
 
 [2]
 Also worthy of thought is the fact that Haynes was denied release during the course of this appeal. Had my view of the applicable guideline range prevailed, she would have long since served her time