41 F.3d 1509
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wesley Earl WALKER, Defendant-Appellant.
 No. 93-4216.
 United States Court of Appeals, Sixth Circuit.
 Nov. 22, 1994.
 
 Before: NELSON, SUHRHEINRICH and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a drug case in which the defendant appeals his conviction and his sentence. As to the conviction, the defendant contends that there was a fatal variance between the indictment, which charged a single conspiracy, and the proofs at trial, which showed multiple conspiracies. As to the sentence, the defendant contends that the district court misapplied the sentencing guidelines by crediting him with an excessive quantity of drugs under U.S.S.G. Sec. 2D1.1(a)(3), by treating him as a leader of the conspiracy under U.S.S.G. Sec. 3B1.1(a), and by finding that a dangerous weapon was possessed under U.S.S.G. Sec. 2D1.1(b)(1). We find none of the defendant's contentions persuasive, and we shall affirm both the conviction and the sentence.
 
 
 2
 * On June 16, 1992, the government's evidence showed, a police informant named Allen Griffen took an undercover agent--detective Tim Haley of the Columbus, Ohio, police department--to the residence of a suspected drug dealer, defendant Wesley Earl Walker. Griffen asked to buy a quantity of crack cocaine, and defendant Walker sent him and detective Haley across the street to the residence of Darryl and Cornelyn Hall. There the men purchased 3.3 grams of crack from a man named Harvey.
 
 
 3
 Harvey talked with defendant Walker after the purchase, and then approached the detective and the informant to discuss an apparent discrepancy in the payment. Unable to agree on the money, Harvey summoned Walker to intervene; the upshot was that detective Haley gave defendant Walker an additional $20. Haley told Walker that he would be back the next day to buy some more crack.
 
 
 4
 Griffen and Haley returned to Walker's home on June 17 and were again directed to Darryl Hall's house. Hall met them at the door with a sawed-off shotgun. Walker joined them a few minutes later and sold Haley 6.1 grams of crack.
 
 
 5
 In the course of this transaction, Haley saw Walker give Hall two baggies of crack to sell to other customers. Walker received $30 in payment. Walker also gave Hall a couple of doses of crack and agreed to deduct $30 from Hall's bill as payment for use of the residence. Before leaving, Haley told Walker that he would be back in a day or so for an additional half ounce of cocaine. They agreed on a price of $700.
 
 
 6
 The next day, June 18, defendant Walker's brother, William Walker, accompanied the detective and the informant to the Hall residence. There they met Anthony Mann, who was identified at trial as the defendant's supplier from Detroit. When a dispute arose over the price of a half ounce of crack, Anthony Mann agreed to a lower price. "[T]his is Wesley's dope anyway," he said, indicating that the drugs were the defendant's.
 
 
 7
 A few hours after this sale, police officers executed a search warrant at the Hall residence. The officers seized 80.9 grams of cocaine powder, 28.3 grams of crack, the "buy" money used earlier in the day, and two firearms.
 
 
 8
 A grand jury returned an eight-count indictment charging the Walkers, Anthony Mann, and Darryl and Cornelyn Hall with drug-related activity. Defendant Wesley Walker was charged in five of the eight counts, several of which alleged participation in a drug conspiracy. The case against him went to trial, and Walker was convicted on all five counts. The district court imposed a sentence of imprisonment for 260 months.
 
 II
 
 9
 On appeal defendant Walker challenges his conviction on the ground that the evidence established the existence of multiple conspiracies and did not demonstrate that he participated in the one conspiracy charged in the indictment. The number of conspiracies is a factual question properly submitted to the jury, and
 
 
 10
 "[t]he fact that a conspiracy can be divided into distinctive sub-groups does not mean there is more than one conspiracy. As long as the different subgroups are committing acts in furtherance of one overall plan, the jury can still find a single, continuing conspiracy." United States v. Rugiero, 20 F.3d 1387, 1392 (6th Cir.), cert. denied, 115 S.Ct. 208 (1994) (quoting United States v. Warner, 690 F.2d 545, 550 n. 8 (6th Cir.1982)).
 
 
 11
 The law is clear, moreover, that "[e]very member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986) (citations and internal quotations omitted). Finally,
 
 
 12
 "[v]ariances ... will not result in reversal unless substantial rights of a defendant have been affected.... Substantial rights in turn, are affected only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." United States v. Zelinka, 862 F.2d 92, 97 (6th Cir.1988) (citations and internal quotations omitted).
 
 
 13
 Given these principles, we think it clear that defendant Walker could properly be found to have been a knowing participant in a single conspiracy, the object of which was to sell crack cocaine. If the evidence might also have supported a conclusion that multiple conspiracies existed, that would not result in a fatal variance. United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991) (citing United States v. Beverly, 913 F.2d 337, 361 (7th Cir.1990), cert. denied, 111 S.Ct. 766 (1991)); see also United States v. Prince, 883 F.2d 953, 959 (11th Cir.1989). Even if there was a variance here, moreover, defendant Walker has failed to show that it affected his "substantial rights" within the meaning of that phrase as used in Zelinka.
 
 III
 
 14
 When reviewing a district court's application of the sentencing guidelines to the facts of a particular case, we are instructed to "accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e). See also United States v. Carroll, 893 F.2d 1502, 1505-06 (6th Cir.1990). Following that admonition here, we find no error in the district court's determination of Mr. Walker's sentence.
 
 A. Drug Quantity
 
 15
 The district court concluded that Walker was accountable for 49.8 grams of cocaine base and 80.9 grams of powder. The court reached these figures by attributing the following drug quantities to Walker: the 3.3 grams of crack purchased from Harvey on June 16, 1992; the 6.1 grams of crack purchased directly from Walker on June 17; the 12.1 grams of crack purchased from Anthony Mann through William Walker on June 18; and the 28.3 grams of crack and the 80.9 grams of cocaine powder seized from the Hall residence on June 18.
 
 
 16
 Defendant Walker objects to the inclusion of the drugs seized at the Hall residence. He asserts in this connection that the record does not show a conspiracy between him and Mann. This assertion has no merit. Mann was identified at trial as Walker's supplier from Detroit, Mann agreed to sell at a lower price because the crack belonged to Walker anyway, and, as we concluded above, a rational juror could easily have found that Mann and Walker were engaged in a single conspiracy.
 
 
 17
 Assuming that there was a general conspiracy that included him and Mann, Walker goes on to argue that the district court committed clear error when it determined that "Mr. Walker is responsible for the drugs that were found on Anthony Mann, because it was reasonably foreseeable that Mr. Mann would have a supply of additional drugs to further the conspiracy." But a criminal act can be "reasonably foreseeable" by a defendant, and thus attributed to him, whether or not he personally performed or participated in the act. United States v. Gresser, 935 F.2d 96, 101 (6th Cir.), cert. denied, 112 S.Ct. 239 (1991). Walker's argument amounts to nothing more than a naked assertion that the events of June 18 were unforeseeable because he did not specifically know about them. That is not good enough; the criminal conduct of a co-conspirator can be attributed to a defendant without the latter's having actual knowledge of the specific crime, as long as such conduct was foreseeable. Walker should have had no trouble foreseeing that his supplier and co-conspirator Anthony Mann would be in possession of a quantity of drugs, and the district court's finding to that effect was not clearly erroneous.
 
 B. Role In The Offense
 
 18
 Mr. Walker contends next that the district court erred in increasing the offense level by four levels because of his role in the offense. Such an increase is directed by U.S.S.G. Sec. 3B1.1(a) "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." Here the evidence showed that defendant Walker employed the services of his brother William, and Harvey, and both of the Halls, and Mann to assist him in his drug distribution enterprise. Anthony Mann supplied Walker with the narcotics, and Mann and the rest of this group sold the drugs for Walker at a price set by him. The four-level role-in-the-offense enhancement was not clearly erroneous.
 
 C. Firearms Enhancement
 
 19
 Finally, the defendant challenges a two-level enhancement imposed by the district court pursuant to U.S.S.G. Sec. 2D1.1(b)(1) for possession of firearms. Walker asserts that the firearms seized from Darryl Hall could not support the enhancement because Anthony Mann allegedly supplied Hall with the weapons to use against Walker. Darryl Hall also testified, however, that Walker stored guns, money and drugs in the trunks of his two Cadillacs. Following the arrest, four firearms were found by the police next to a triple beam scale in the trunk of one of Walker's cars. This alone would be sufficient to support the enhancement. See United States v. Medina, 992 F.2d 573, 592 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994) (upholding a firearms enhancement where the defendant stored guns in his apartment during the course of a drug conspiracy).
 
 
 20
 Although Hall maintained that he kept firearms to protect himself from the defendant, moreover, he brandished a sawed-off shotgun when conducting the drug transaction with Haley and Griffen. This too would suffice to justify the enhancement. See United States v. Sanchez, 928 F.2d 1450, 1459 (6th Cir.1991) (the government need only demonstrate that a member of the conspiracy possessed a weapon and that this possession was reasonably foreseeable by other members).
 
 
 21
 AFFIRMED.